[City of Gadsden, *et al.* v. Mitchell, *et al.*]

# City of Gadsden *et al. v.* Mitchell. *et al.*

## Bill for Mandatory Injunction.

(DECIDED APRIL 10, 1906, 40 So. REP. 557.)

1. *Municipal Corporations; Waterworks Franchise; Contract.*—The granting of a franchise by the city to construct and operate a water works system, and the making of a contract by the city with such water works, to furnish water for public and private use within the city, are within the incidental powers of the charter, and an exercise of its business or proprietory powers, and not a delegation of its governmental functions.

2 *Waters; Water Companies; Municipal Franchise and Contract; Time Limit.*—In the absence of a time limit fixed by statute or the constitution, the court cannot say, as a matter of law, that thirty years is an unreasonable length of time for which to grant a water works franchise, and to make a contract for furnishing of water for public and private use.

3. *Municipal Corporation; Charter and Incidental Powers; Water; Discretion.*—Within the charter or incidental powers of a municipal corporation, it is in the discretion of the corporate authorities to determine how best to provide a method of obtaining for the corporation and its inhabitants, pure and wholesome water, and they may, by carefully guarded contracts, do so.

4. *Waters; Water Companies; Designation of Streets by City; Mandatory Injunction; Condition Precedent.*—The contract not prescribing the order in which the work of constructing the water plant shall be begun, it is not a condition precedent to maintaining a bill for mandatory injunction to require the city to designate the streets in which pipes shall be laid and hydrants located, that complainants shall have purchased machinery, located water towers and pumping station, etc., or otherwise begun to perform their part of the contract.

5 *Same.*—Under the contract in this case complainants had the right to require the city authorities to designate the streets upon which pipes were to be laid and hydrants located, and upon failure, on demand, of the corporate authorities to do so, mandatory injunction will lie to compel action.

6. *Same; Municipal Contract; Enforcement; Invalidity of Part.*— The contract being valid in part and invalid in part, the valid conditions may be enforced, while the invalid cannot.

7.  *Contracts; Enforcement; Parties.*—Under a contract made with
"M and associates," upon allegation that another is the only
associate of M., such another is a proper party complainant
to a suit to enforce the contract.

APPEAL from Etowah Chancery Court.

Heard before Hon. W. W. WHITESIDE.

R. A. Mitchell and associates filed their bill for manda-
tory injunction to require the proper authorities of the
city of Gadsden to point out and designate such streets
in the said city of Gadsden as it was desired that water
mains and hydrants be laid in. The bill sets up the con-
tract which is fully set out in a former report of this
case (*Weller v. City of Gadsden, et al.,* 141 Ala. 642) and
reference is here made to the facts and opinion in that
case for the proper understanding of the opinion in this
case. The bill also alleges that subsequent to the making
of the contract, and after the opinion in the case above
referred to was rendered, an ordinance was passed by
the board of mayor and aldermen of the city of Gadsden
re-ratifying and re-affirming the contract. That it is
also alleged that the complainants are ready to carry out
and perform their part of said contract, and to that end
have requested the proper authorities of the city of Gads-
den, in writing and otherwise to point out and designate
the streets in the city of Gadsden, where it is desired
that complainants begin laying their water mains, erect-
ing hydrants, and doing other necessary things to a prop-
er carrying out of their part of the contract, and that
the city authorities have declined and refused to desig-
nate said street, and to permit complainants to comply
with said contract, and it is prayed that the authorities
be required to designate said streets and to permit com-
plainant to proceed with the work necessary to a com-
pliance with their part of the contract. The city de-
murred to the bill and by its demurrers presented for
consideration the right of the city to enter into the con-
tract; that it was a delegation of the governmental
functions of the city to others than the duly qualified
officers of the city; that the contract was unreasonable;
that it was void; and that the city had the right to annul
the franchise and revoke the contract and that the bill

[City of Gadsden, et al. v. Mitchell, et al.]

showed that the complainants were not in position to demand of the city anything as complainants had not done or performed anything looking to the carrying out on their part of the said contract. Motion was also made to dismiss for want of equity, the chancellor overruled the demurrers and denied the motion to dismiss for want of equity, and from this decree, the city prosecutes this appeal.

H. T. DAVIS and BILBRO. INZER & STEPHENS, for appellant.—The case here is that of a contract between individuals and a subordinate branch of the government acting under delegated governmental power to conserve the interest and promote the welfare of the people who are the wards of the government. The powers granted to the city of Gadsden as to the matters in the foregoing bill are found in Sec. 22 Subd. 10 and 26 of the charter of said town (Acts 1882-3.)

These powers are continuous. They inhere in the municipality, to be exercised at all times according to the wisdom of municipal government for the benefit of the people. They are not exhausted by being once exercised: As, for instance, power given to a city to fix water rates is not exhausted when rates are fixed.—*City of Knoxville v. Knoxville Waterworks Co.*, 64 S. W. Rep. 1875.

The very fact of the continuity of these powers shows that they impose important governmental functions. They are of the police powers of the municipality, and this means a power to be exercised by the municipality for the health, comfort, peace and repose of the people. Waterworks are for the promotion of the public health, for the prevention of disease and spread of same, and for the comfort and convenience of all the inhabitants alike, and in which all alike are interested.—*City of Mobile v. Bienville Waterworks Co.*, 130 Ala. 385; A. & E. Enc. Law, Vol. 30 pages 403 and 416; *N. Y. Health Department v. Trinity Church*, 145 N. Y. 32.

Preservation of the public health is one of the duties of government, and devolves upon the state as a sovereign power, and all steps or measures taken by municipal corporations to that end are in the exercise of purely

governmental functions.—*Love v. Atlanta*, 51 Am. State at bottom of page 66; *Springfield Fire & Marine Ins. Co. v. Keesville*, 51 Am. St. 667.

Such action by a municipality is not the exercise of a proprietary or business power.—1st. Dillon Sec. 66.

So in the case of\the *City of Greenville v. Greenville Waterworks Company*, 125 Ala. 625, Justice SHARPE refers to the act of providing the city with water as being the exercise of a business power. The act of doing so is one thing, but the regulations, rules, conditions and powers to be exercised in its performance are quite a different thing. Aside from this, the Greenville waterworks case was to make the city pay for water it had used. That case did not involve a discussion of the question whether or not the contract, aside from paying for the water the city had used, delegated or surrendered any of its governmental duties in respect of supplying the city with water.

The power conferred upon the city as to furnishing the city and inhabitants pure water, being the creation of a governmental duty, cannot be delegated.—1st Dillon, Secs. 96 and 97.

If the effect of any of the provisions of the ordinance constituting the contract in this case be the surrender, abrogation or abeyance of the governmental powers and duties of the city, such provisions are against public policy and void.—*City Council of Montgomery v. Cap. City Waterworks*, 92 Ala. p. 361, 376, 366.

The power given to the city to make all needful provisions to supply the city with water, and to exercise the power of eminent domain to supply it with pure water, plainly imposed two great governmental duties: 1. To furnish a sufficient quantity of water. 2. To furnish a pure quality of water.

The legislature said to the city, "You do this—you must determine the quantity and quality—you are the trustees of the government to that end."

The contract is ultra vires the city of Gadsden in that: (a) It leaves it to complainant to select the kind of water to be furnished the city and its inhabitants. (b) It leaves it to the complainants to determine the kind of

conduits, through which water shall flow into the homes of the people for drinking, for cooking and other domestic uses.  (c)  It leaves it to complainants to determine when the streets of the city shall be opened to lay pipes and mains.

We respectfully submit that more important governmental duties do not rest upon respondents than are involved in above sections, a, b, and c, and yet these duties have been turned over to complainants to be exercised by them in their discretion.

It cannot be questioned that the duty of the city in respect of the quality of the water to be furnished its inhabitants is governmental.  To obtain pure water the legislature granted the city the power of eminent domain, yet the city has turned over to complainants the right to take water for the inhabitants of the city from whatever source the complainants may desire.

A surrender or abeyance of such powers by a municipality is against public policy and void.—Authorities *supra.*

The contract is further *ultra vires* the city in that:  (d)  It leaves it to the complainant and the city engineer to determine the size of the mains.  (e)  It provides that the city of Gadsden and its inhabitants may be left without a supply of water for any continuous period of three months during the life of the contract.  (f)  It requires the city of Gadsden to accept absolutely complainant's waterworks (if ever constructed) simply on showing a head of water 200 feet through a hose of a certain size.  (g)  It provides terms for the purchase of the waterworks after 20 years which virtually makes the contract a perpetuity—for no such terms could ever be complied with.  (h)  The contract allows complainants at their pleasure to use the highways of the city for the purpose of furnishing water to any town or city, and it provides that the city shall make no objection.  This places it beyond the power of the city to this extent to control the use of its highways.  The power given the city is to provide water for the city, not other cities.  (i)  It is a contract for thirty years, fixing rates for that time to be paid by the city, maximum rates for the inhabitants, compelling the city to take not less

than 10 hydrants for every mile of extension whether needed or not, compelling the city for all that time to take not less than 60 hydrants when new methods and new systems arising from intelligent research may disclose they are unnecessary. The better and less expensive ways coming into use cannot be restored to for thirty years, because the city is tied for thirty years by its contract.

Such a contract as to such important matters is void as against public policy. It is inimical to the duty of holding the reins of government so as to administer its powers at all times for the benefit of the people. This is one of the reserved rights of the people set forth in the bill of rights, which no provision in the constitution and no act of the legislature can impair, abridge or destroy.

Power given to a city to erect and maintain sewers renders void an ordinance authorizing certain other persons to receive bids and to fix such limitations as they may impose for the erection and maintenance of the sewers, not being required to report to the council.—*Lowry v. City of Livingston,* 25 Ky. Law. Rep. 392; 75 Southwestern 202.

A city council having authority to construct sewers cannot delegate its authority vesting discretionary power in a committee and chief engineer, as to such construction.—*People v. McWathy,* 177 Ill. 334.

Power given the city of New York to construct piers on land and under water is legislative which the city cannot abrogate or restrict.—*Whitney v. City of New York,* 6 Abb. 329, new cases.

The contract is void as to time and prices. The city under constitutional provisions may grant a franchise for thirty years, but it is not given the power to make a contract as to the terms and conditions under which said franchise is to be used for thirty years. It is beyond the power of man to know whether the terms fixed today upon which the people may be supplied with water, will be reasonable one, two or three years hence. The power must be left open and unfettered to be exercised by the city for the good of the people, and hence for the good of government. Municipal corporations may not enter into

[City of Gadsden, *et al.* v. Mitchell,· *et al.*]

a contract which by'reason, of duration through a long
period of time, or of the nature of the subject matter,
tends to restrict the municipal authority in the full ex-
ercise of its judgment and discretion, in performing pub-
lic governmental duties.—A. & E. Enc. Law, Vol. 20,
page 1146 (h); A. & E. Enc. Law, Vol. 30, page 416;
*Hall v. Cedar Rapids,* (Iowa) 88 Nw. Rep. 448; *Flinn
v. Little Falls Ice Co.,* 77 NW. Rep. 38; Reaffirmed 78
NW. 106; 2nd Dillon, third Ed. Secs. 692-3-4-5-7 and
716; *Saginaw Gas Co. v. Saginaw,* 28 Fed. Rep. 529;
*Long v. Duluth,* 32 Am. St. 547 (49 Minn. 280); *Rich-
mond Gas Co. v. Middleton,* 59 N. Y. 228; First Beach
on Municipal Corporations, Secs. 619-20-22 and notes;
*Gale v. Kalamazoo,* 9 Am. Rep. 80; *Danville v. Water-
works,* 178 Ill. 299 (69 Am. St. 304), 180 U. S. 619; *Free-
port Waterworks v. Freeport,* 180 U. S. 588; *Rogers Wa-
ter Co. v. Ferguson,* 180 U. S. 624.

The above and other authorities reiterate time and
again the familiar principle that a municipal corporation
can exercise no power save that which is expressly con-
ferred or necessarily implied, and that doubts as to
whether a given act is authorized are resolved in favor of
the government and against the proposed act. It is es-
sential to the preservation of the municipal government
for the people "that its wings be kept clipped."

But if it appears that the provisions in the contract do
not show a delegation of any governmental power, or a
restraint upon the city in performing any of its duties
to the public in respect of giving pure water, or otherwise,
nevertheless it remains that the contract is clearly un-
reasonable and unjust in most, if not all, the particulars
specified as *ultra vires* provisions. Being unjust, in-
equitable, mandatory injunctions will not be granted.—
4th Mayfield 840 Sec. 61 and authorities cited; 3rd May-
field 202 Sec. 511 and authorities cited; 3rd Mayfield 206
Sec. 582 and authorities cited; 1st Brickell page 692 Sec.
760; 2nd Story Eq. Jurp. Sec. 760; Fry on Spec. Per.
Sec. 317.

Complainants' claim to injunctive relief being based
on contract they must show that they have performed as
far as they could their part of the contract and that they

are in a position to ask equitable relief.—2 High on Injunction, Sec. 1119; A. & E. Enc. P. & P. Vol. 10 p. 932 note; A. & E. Enc. P. & P. Vol. 20 p. 452.

Complainants do not show that they have done anything under their alleged contract towards performing what they agree to do. They have not selected a location for their works—have not bought their engines, nor machinery, nor appliances for their plant—have not spent a cent under said contract and have not made any arrangements whatever for the work to be done. All this they could have done, and should have done, before the bill was filed. No interference is shown.

Complainants as to relief by mandatory injunction have a clear, specific and complete remedy at law—a remedy to enforce (if they have the right) exactly what they ask by their bill.

When a street commissioner refuses to issue a permit for the construction of street railroads, mandamus to to compel him to issue is the proper mode to raise the question as to whether his refusal was right or wrong and injunction will not lie.—*Nassau Electric Ry. Co. v. White,* (Breeklyn) 12 Mis. Rep. 631; 34 N. Y. Supp. 960; *Topeka v. Topeka Water Co.,* 58 Kan. 349.

The plain object of this bill is to secure an exclusive enjoyment of an alleged waterworks franchise—a monopoly as to one of the necessaries of life—this cannot be done.—*Tuscaloosa Ice Co. Case,* 127 Ala. 123.

Exclusive grants are contrary to the whole theory of our government and the bill of rights which declares that no man or set of men are entitled to exclusive public emoluments or privileges from the community.—2nd Dillon Munic. Corporations 3rd Ed. Sec. 694.

Mandatory injunction will not issue if the right is doubtful, and laches appear.—A. & E. Enc. Law Vol. 16 page 357.

Nor will it be granted unless extreme and serious damages will ensue from withholding it.—A. & E. Enc. Law Vol. 16 p. 342.

Nor will it be granted if on balancing the conveniences between the parties it appears reasonably more harm will come to the public than will be suffered by complain-

[City of Gadsden, et al. v. Mitchell, et al.]

ants. This rule is especially applicable where the party applying for it has been guilty of laches.—A. & E. Enc. Law Vol. 16 p. 363-4.

A close reading of the bill will disclose glaring laches. There is a studied effort in the bill to avoid this implication, but the fact is seen that the complainants have been too long silent in asking for the streets to be designated for the pipes. They have never said anything about having the streets graded.—16 Cyc. 152 & 162; 16 A. & E. Enc. Law p. 336-7 and 8.

As to laches: The contract was made on the 11th day of November, 1902, and work to begin on or before Jan. 1st, 1905.

During this time they did nothing. Four days before their time was out they requested a designation of streets for mains and asked for further time in which to begin work. The council extended their time 30 days from January 1st, 1905. A committee of the council appointed to designate streets for mains reported and asked for further time. That committee never took action. On 1st Tuesday in March, 1905, (Charter City of Gadsden) a new council was elected and not until June 5th, 1905, was there again a request for streets to be designated. This long delay is inexcusable in the presence of the urgent necessity for a proper waterworks system as declared in the first sentences of the ordinance contract, and in presence of the fact that complainants have ever been ready, willing and able to comply with their part of the contract as they solemnly aver in the bill.

The bill is speculative—a mere fishing venture—fishing to get something out of a matter the law condemns. Its suggestions are to the underlying motives of respondents are wild. Besides respondent's acts in trying to get means to build a waterworks plant are lawful and such acts can never be the basis of complaint. The bill is a covert attempt to so hedge complainants alleged contract as to make it monopolistic, or to wring from respondents a consideration to cancel it. As to this it is significant that complainants written request of June 5th, 1905, was made just as the city was beginning its second effort to provide water for its inhabitants.

We insist the contract is void for the reasons above expressed and for the reason that Weller, then a party known to complainant, Mitchell, was not made known to respondent.—*Marshall v. Whitecreek*, 47 Tenn. 252, (7 Caldwell) ; 11 Century Digest Column 25 Sec. 12.

The contract is wanting in mutuality; the minds of Weller and the city of Gadsden have not met in assent to and concurrence in its terms.

The act of the city council in repealing the ordinance contract of complainants was expressly authorized by section 22 of the declaration of rights of the constitution of 1901, which is as follows :

"That no *ex post facto* law nor any law imparing the obligation of contracts, or making any irrevocable or exclusive grant of special privileges or immunities shall be passed by the legislature; and every grant of a franchise, privilege or immunity shall forever remain subject to revocation, alteration or amendment. The question now is in whom vests the power of revocation, alteration or amendment.

The constitution of 1875, article 1, section 23 reads as follows :

"Section 23. That no *ex post facto* law or law imparing the obligation of contracts, or making an irrevocable grant of special privileges or immunities shall be passed by the general assembly."

It thus appears that section 22, article 1 of the constitution of 1901 enlarges section 23, article 1 of the constitution of 1875 in two important particulars : 1. It prohibits the legislature from making an exclusive grant of special privileges. 2. It makes "every grant of a franchise, privilege or immunity forever subject to revocation alteration or amendment."

It will be seen that every grant of franchise is thus made subject to revocation. This means that no grant of a franchise can be made which may not be revoked.

"All franchises, privileges and immunities shall be subject to revocation, alteration or amendment."—Journal Constitutional Convention 1901 page 381.

Unquestionably the plain object of this provision is to keep franchises, privileges and immunities granted

[City of Gadsden, et al. v. Mitchell, et al.]

by the government, within the graph of the government. Why this necessity?

The declaration of rights answers: "That the great and general essential principles of liberty and free government may be recognized and established."—Declaration of rights Constitution 1901, Article 1.

This power of revocation, alteration or amendment is set forth as an essential principle of liberty and free government, and that such is its character is plainly manifest in many instances where granted franchises, privileges or immunities have proven dangerous to the integrity of our government. They lead to oppression and abuse, and against these conditions 'tis the common impulse of man to rebel the world over. So that this right of revocation is absolute, unqualified and inviolate.

In construing a constitutional provision, especially a provision of the declaration of rights, it is not so much the form and manner of expression that are to be considered, as the nature and object of the provision, and the end to be accomplished. It is to be construed so as to effectuate its principles, and general terms used to express a purpose include everything to give reasonable effect, intelligently and fairly to the object in view. —*Carrol v. State*, 58 Ala. 396; *Ex parte Gayle*, 108 Ala. 574; *Balentine v. Wickersham*, 75 Ala. 533; *Hand v. State*, 7 Tex. App. 212; *People v. Facher*, 50 N. Y. 283; *Donovan v. State*, 34 Ala. 216.

BURNETT, HOOD & MURPHREE, and DORTH, MARTIN & ALLEN, for appellee.—Contracts of municipal corporations are construed and controlled by the same rules of law and constitutional limitations as contracts between natural persons or private corporations.

"A city acting under special as well as general authority in granting a permit to a private person to construct vaults, under its streets or alleys, and requiring compensation therefor acts in its private corporate capacity, as distinguished from its public and political or governmental capacity, and the rules applicable to the exercise of its public political powers do not apply."—*Gregsten v. City of Chicago*, 36 Am. St. Rep. 496.

[City of Gadsden, *et al.* v. Mitchell, *et al.*]

"A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary *quasi* private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by those rules governing a public functionary, or agency of the state. In their exercise it is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class, it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation.—*Trust & Savings Bank v. The City of Arkansas City,* 76 Fed. Rep. 282; Dillon's Municipal Corp. (3rd Ed.) Sec. 66 and cases cited in the note.

"In contracting for water works to supply itself or its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to gover nits inhabitants, but to obtain a private benefit for the city itself and its denizens."—1 Dillon Mun. Corp. Section 27.

"A city in contracting with an individual for the supply of gas to its inhabitants is bound by its contract, the same as an individual and can do nothing to impair their obligations."—*Western Sav. Funds Society v. The City of Philadelphia,* 31 Penn. St. 175; *City of Indianapolis v. The Indianapolis Gas Light & Coke Co.,* 66 Indiana, 396; *New Orleans Gas Co. v. Louisiana Gas Co.,* 116 U. S. 650; *Louisville Gas Co. v. The Citizens Gas Co.,* 115 U. S. 683; *New Orleans Water Works v. Rivers,* 115 U. S. 674; *St. Tammany Water Works v. N. O. Water Works,* 120 U. S. 64.

The supreme court of Alabama, in speaking of the contracts of municipal corporations in this state, makes use of this language:

"A corporation is an artificial person—a creature of sovereign legislative power. And there is no doubt such body corporate within the compass of its powers, may enter into contracts just as a natural person may make like contracts."—*City of Selma v. Mullen*, 46 Ala. 414.

"The act of providing the city with water for fire purposes pertains to the business powers, and not to the governmental powers, of the city council; and it had authority to bind the city on that account for a reasonable time, if not for the whole period named in the ordinance, and whatever was done in execution of the contract will be referred to that power."—*City of Greenville v. Greenville Waterworks*; 125 Ala. 627.

Courts will take judicial knowledge of the charter of a city or town.—*Lord v. Mobile*, 113 Ala. 360.

The charter of the city of Gadsden will be found in acts 1882-3, page 281.

It will be noticed that the city of Gadsden has very large and general powers to make and adopt by-laws and ordinances in whatever manner and on whatever subject for the good government and order of said city as they may think proper.

The charter powers of the city of Greenville granting authority to provide for a water supply are certainly no broader if as broad, as those contained in Gadsden's charter. The supreme court of Alabama, held that Greenville had the power to make a similar contract to supply itself and inhabitants with water.—*City of Greenville v. Greenville Water Works Co.*, 125 Ala. 627.

Again, independently of the express power to make such a contract, the power to supply itself and its inhabitants with water is one of the incidental powers of a municipal corporation.

"A city having power to pass ordinances respecting the police of the place and to preserve health is authorized as a sanitary police-regulation to contract and procure a supply of water by boring an artesian well on the public square or otherwise, and is the judge of the mode best adapted to accomplish the object."—1 Dillon on Mun. Cor. (4th Ed.) Section 146.

In *Livingstan v. Patkin*, 31 Ala. 542 the power to supply a town with water is stated to be derived from the

general powers of a municipal corporation. Again, it is said in the same opinion that the power to secure a water supply is derived from and is said to be incidental to the general authority of the city to make all contracts necessary for its welfare.—See 1 Dillon Section 443, Foot Note 1.

It will thus be seen how easy and incidental to the general powers of a municipal corporation is the power to procure a proper water supply.

"Thus in this state it has been held that independently of any statutory authority such corporations possess the inherent power to enact ordinances for the protection of its citizens against fire, and it is further said that this power not only authorized the enactment and enforcement of ordinances establishing fire limits and regulating buildings, but the purchase of apparatus for extinguishing fires and furnishing water."—*Crawfordsville v. Broden*, 30 Am. St. Rep. 219.

In view of the foregoing it seems to us that the power of Gadsden to make the contract in question cannot be doubtful.

It is further insisted by those representing the city that, conceding the power of the city to make a contract to supply itself and inhabitants with water, the exercise of it for so long a period as thirty years is unreasonable, and that for that reason the contract is void.

"The making of contracts for the supply of gas and water is a matter delegated to the governing powers of a municipality, to be exercised according to their own discretion; and in the absence of fraud, while acting within the authority delegated to them, their action is not subject to review by the courts."—*Vincennes v. Gas Co.*, 16 L. R. A. 489.

The authority is so far of a discretionary character as to authorize the corporate officers to determine when the wants of a city demand a supply of water and with this discretion courts do not interfere."—*City of Valparaiso v. Gardner,* 49 Am. Rep. 417.

"It is well established that the discretion of municipal corporations within the sphere of their powers, is not sub-

ject to judicial control, except in cases where fraud is shown, or where the power of discretion is being abused to the oppression of the citizens."—*City of Crawfordsville v. Broden*, 30 Am. St. Rep. 221.

"The discretion of municipal corporations within the sphere of their powers is as wide as that possessed by the government of the state. It is no more competent for the judiciary to interfere with acts of the one than the other. Where, therefore, corporations or their officers are acting within well recognized powers or exercising discretionary powers, court sare wholly unwarranted in interferring unless fraud is shown or the power of discretion is being manifestly abused to the oppression of the citizens."—16 Am. Eng. Ency. Law, (2d Ed.) 1046.

From the foregoing it will be seen that in matters of this kind the discretion of the town council assumes a wide scope and cannot be interfered with or checked by the judiciary except in extreme cases. As such a contract with a city of 6,000 inhabitants is worth more than one with a smaller city, it goes without saying that if 30 years is a reasonable time in contracts with cities of the first class, it would certainly be reasonable in contracts with cities of the second class. We do not believe that Justice Tyson went far enough in the opinion referred to on this subject. We feel confident that the contract is valid for the period of thirty years.

On this subject see the following cases:—*City of Greenville v. Greenville Water Works, supra; Mitchell v. City of Gadsden*, 37 So. Rep. 682; *Oconto Water Supply Co. v. Oconto*, 80 N. W. 1113; *Hurley Water Co. v. Vaughan*, 91 N. W. 97; *Little Falls Electric & Water Co. v. Little Falls*, 102 Fed. Rep. 663; *Defiance Water Co. v. Defiance*, 90 Federal 753; *Cunningham v. City of Cleveland*, 98 Federal 657.

It will be seen from the foregoing authorities that the instrument in question is a contract, which is protected from impairment by both the federal and state constitutions; that the city had the power to make it, and that it is not void because it has a duration of thirty years.

Can the city repeal or annul the contract?

[City of Gadsden, *et al.* v. Mitchell, *et al.*]

"The ordinance under which complainants claim, as we have said, is more than the mere grant of a franchise. It is a contract, and must be treated as such."—*Mitchell v. City of Gadsden*, 37 So. Rep. 686; *Vincennes v. Light Co.*, 16 L. R. A. 485.

Where the council or the legislature has tendered a franchise in the street and an agreement is made to take the water, if the franchise is accepted and the agreemnt made, either by doing something towards its acceptance, such as building the works, or by accepting in the words of the grant, or by taking possession of the easements granted, it becomes a contract, and is protected by the federal and state constitutions.—*Walla Walla v. Walla Walla Waterworks Co.*, 172 U. S. 1; *N. O. Gas Light Co. v. La. Gas Light Co.*, 115 U. S. 650; *N. O. Waterworks Co. v. Rivers*, 115 U. S. 674; *St. Tammany Waterworks Co. v. N. O. Waterworks Co.*, 120 U. S. 64; *Louisville Gas Co. v. Citizens Gas Co.*, 115 U. S. 700; *City of Vincennes v. Citizens G. L. & C. Co.*, 16 L. R. A., 488; *Indianapolis St. Ry. Co. v. Citizens Street Ry. Co.*, 127 Ind. 369; *City of Newport v. Newport Light Co.*, 84 Ky. 174; *City of Louisville v. Tribb*, 84 Ky. 290.

Another contention made by the city is that the contract as a whole is void because as originally agreed to, it attempted to grant to Mitchell and associates the exclusive right to build and maintain a water works system in the city of Gadsden. This question is not now, as we view it, involved in the case, as the contract has been modified by eliminating this feature from it. We shall, however, discuss this question to some extent because what we shall have to say in this connection will equally apply to other portions of the contract which have been criticized by opposing counsel.

It will be seen that until the invalidity of the grant for its exclusiveness is challenged by the act of some one, its validity or invalidity is a moot question, and ought not to receive consideration by any court.—*Ill. Trust & Savings Bank v. Arkansas City*, 76 Fed. 281.

Again the contract is not invalid except in the sense that it is *ultra vires* as to its exclusive feature, and that

feature is easily separable from the other valid parts
which confer on complainants all they need to build a
system of water works in Gadsden. In other words, ap-
pellees have rights under the contract which will enable
them to build water works without resort to the invalid
and exclusive feature at all.

"The test by which to ascertain whether a contract
assailed as illegal is capable of enforcement is whether
the plaintiff requires the aid of the illegal transaction
to support its case. When his rights can be established
without the aid of the illegal transaction, it does not
effect them."—2nd Mayfield's Digest, Paragraph 613 and
authorities cited.

And this is always the case where the stipulations of
the contract are separate and distinct as they are in this
instance. The offensive feature of the contract here is
found in the first grant to complainants which is to give
Mitchell and associates the exclusive right to construct,
maintain and operate water works and conductors in the
city of Gadsden.

The second grant or stipulation of the contract is the
right to enter upon any and all streets, alleys, lanes,
avenues and public grounds in said city. It will be seen
that the second grant or stipulation of the contract gives
Mitchell and associates all the power necessary to build
water works in the city of Gadsden and is complete of
itself without any aid from the first exclusive grant.
It will be noticed also that it is perfectly valid, contain-
ing no exclusive or other objectionable features, and that
it is capable of enforcement and performance without
the slightest aid from the first or exclusive section of
the contract.—76 Fed. Rep. 280; *Clarksburg Elec. Light
Co. v. Clarksburg,* 50 L. R. A. 142; 76 Fed. Rep. 380; 125
Ala. 640.

Section 22 of the Constitution of Alabama, 1901, does
not give the council the right to repeal the franchise and
contract. That right is legislative.—*Atchison Ry. Co. v.
Pacific Ry. Co.,* 31 Kan. 666; *State v. Mayor of Jersey
City* 8 Atl. Rep. 123; *Citizens Horse Ry. Co. v. Bellville,*
47 Ill. Ap. 388; *Mayor v. Houston Ry. Co.,* 83 Tex. 548;
*Baltimore T. and G. Co. v. Baltimore,* 64 Fed. 153; *Ar-*

*cata v. A. & M. R. R. Co.*, 28 Pac. 67; *Coast Line Ry. Co. v. Savannah*, 30 Fed. Rep. 646; *Van Hoffman v. Quincy*, 4 Wallace 535; *People v. O'Brien*, 111 N. Y. 1.

Counsel discuss other features of the contract, but does not cite any authorities.

The appellees have not been guilty of laches. A careful consideration of the bill and its averments will demonstrate this; the contract provides for the contingency that arose on account of litigation heretofore.—*Montgomery Light Co. v. Lahey*, 121 Ala. 132; *First National Bank v. Nelson*, 106 Ala. 542; *Shorter v. Smith*, 56 Ala. 208; *Scruggs v. Decatur M. & L. Co.*, 86 Ala. 173; *Galliber v. Codwell*, 145 U. S. 368.

The city provided for the present and future supply of pure and wholesome water to itself and inhabitants by the contract under consideration and agreed to take water under the contract and cannot now build and operate a plant of its own.—*Churchward v. Queen*, L. R. I. Q. B. 173; *Barton v. McLain*, 5 Hill 256; *Manistee Iron Works Co. v. Shores Lumber Co.*, 92 Wis. 21; *Delaware & Hudson Canal Co. v. Penn. Coal Co.*, 8 Wall 288; *Tyrone G. & W. Co. v. Tyrone*, 195 Penn. 566; *Walla Walla Water Co. v. Walla Walla*, 172 U. S. 1.

The purpose of the contract was not to govern the inhabitants of the city, but to obtain a private benefit for both the city and its inhabitants—that is the purpose was within the business proprietary powers of the city as distinguished from its governmental and legislative functions. It should, therefore, receive the same construction as though it had been entered into between individuals.— *Ill. Trust & Savings Bank v. Arkansas City*, 76 Fed. Rep. 271; *Cunningham v. City of Cleveland*, 98 Fed. Rep. 663; *Western Sav. Fund Soc. v. Philadelphia*, 31 Pa. St. 175; *Bailey v. New York*, 3 Hill (N. Y.) 531; *Brumm's Appeal* (Pa. 1886) 12 Atl. Rep. 855.

"In the construction of all contracts the object is to ascertain and, if possible, effectuate the intention of the parties, so that performance may be enforced according to the sense in which they mutually understood at the time it was made; and to ascertain the intention it is necessary not only to examine the instrument itself, but

[City of Gadsden, et al. v. Mitchell, et al.]

also to consider the situation of the parties, the subject matter, and the object it is intended to accomplish, and every word and clause must be taken into consideration, and if possible, given some effect."—*Electric Light Co. v. Elder Bros.*, 115 Ala. 148; *Mason v. Ala. Iron Co.*, 73 Ala. 270.

It is a well settled fact that the law implies duties and obligations in a contract other than those which are expressed, and the implied duties and obligations are as much a part of the contract as those expressed. Or, to express it differently, what is implied in a statute, pleading or contract, is as much a part of it as what is expressed.—*U. S. v. Babbit*, 1 Black, 55; *Massachusetts v. Rhode Island*, 12 Peters 123; *Union Depot Co. v. Chicago Ry. Co.*, 113 Mo. 213.

The case of *Southwest Mo. Light Co. v. City of Joplin*, 101 Fed. Rep. 23, is somewhat similar to the case in question. In it the proposition we are now considering is very fully and ably considered.—See also, *White v. City of Madville*, 35 Atl. Rep. 694, 177 Pa. St. 643; *Hendricks v. Hughes*, 117 Ala. 591; *McCurry v. Gibson*, 108 Ala. 451.

The bill has equity, and while it is not strictly a bill for the specific performance of a contract, it is in that nature and is more properly speaking a bill to prevent the impairment or destruction of contractual obligation. This kind of bill has been a number of times upheld in Alabama.—*Mobile v. L. & N. R. R. Co.*, 84 Ala. 123.

Other cases upholding bills of this character are the following:—*S. & N. R. R. Co. v. Highland Ave. and Belt R. R. Co.*, 98 Ala. 400; *Bienville Water Co. v. Mobile*, 112 Ala. 260; *Hendricks v. Hughes*, 117 Ala. 591; *Walla Walla W. Co. v. Walla Walla*, 172 U. S. 1; Lawyers Edition 43, 341; *Vicksburg Water Co. v. Vicksburg*, 185 U. S. 65.

On the question of the validity of the contract and the construction of it with reference to the several features in it criticised by opposing counsel, we cite the case of *Sims v. Brewing Co.*, 132 Ala. 311.

We desire to cite generally for the information of the court the following cases:—*Val Pariso v. Gardner*, 49

Am. Rep. 416; *Quincy v. Bell*, 106 Ill. 337; *Monroe Water Works Co. v. Monroe*, 85 N. W. 685, 100 Fed. Rep. 802; *Fidelity Trust & Guaranty Co. v. Fowler W. Co.*, 113 Fed. 560, 102 Fed. Rep. 663.

On the general subject of the bill and also on the subject of the right to contract with reference to rates we cite the following cases:—*City of Cleveland v. Cleveland C. R. Co.*, 194 U. S. 517; *City of Detroit v. Detroit C. S. R. Co.*, 184 U. S. 368.

On the question of the exhaustion by the city of its power to build and own a water works itself, we cite the cases of *Walla Walla v. Walla Walla Water Works*, 172 U. S. 1; *White v. Meadville*, 34 L. R. A. 570; *Atlantic City Water Works Co. v. Atlantic City*, 39 N. J. Equity 367.

SIMPSON, J.—This is an appeal from a decree over-ruling a motion to dismiss the bill for want of equity and demurrers to the same. In 1902 the appellant (defendant below) passed the ordinance and entered into the contract shown in the record, whereby certain rights were granted to appellee (complainant) and said complainant undertook and promised to build a system of water works for defendant, with stipulations as shown, and agreements on the part of defendant to pay for certain service to be given to the city. On June 1, 1903, defendant passed an ordinance by which it undertook to repeal the first ordinance. On December 27, 1904, another ordinance was passed, reciting the fact that Justice TYSON in his opinion had declared that the contract between complainant and defendant could not be repealed, and, as the mayor and aldermen thought said opinion correct, the parties had agreed on certain modifications, and the original contract was in all things ratified and confirmed and declared to be in full force. This was accepted in writing by complainant, and has never been repealed. Subsequently complainant demanded of the city authorities that the streets in which the pipes were to be laid be designated, and the location for hydrants designated, in accordance with the terms of the contract, and the board of mayor and aldermen of said city passed an ordinance appointing a committee of three aldermen

to attend to that matter. This committee never performed the duty, and, when complainant renewed the request, a reply was received, which was signed, "Charles P. Smith, Mayor of the City of Gadsden," saying, "I am instructed to say that the mayor and board of aldermen of the city of Gadsden do not understand that they are under any obligation to comply with your request."

A considerable portion of the argument is devoted to the question as to whether the mayor and aldermen of said city could repeal the ordinance by which the contract was made, and thus absolve the city from the obligations of the contract. We do not see that this question arises at all, as the original ordinance, with the modifications, was re-enacted and the contract reaffirmed. So that the only question is whether, with the contract still in force and unrepealed, said city can refuse to carry out its provisions. We hold that the cty had the power and authority to enter into said contract, and adopt what was said by Justice TYSON in the cause of *Weller v. City of Gadsden*, 141 Ala. 642, 37 South. 682, in so far as he treats of the validity of the contract and of its several portions. The making of such a contract is not a delegation of a governmental function, but is an exercise of its business or proprietary powers.—*Gregsten v. City of Chicago*, (Ill.) 34 N. E. 426, 36 Am. St. Rep. 496; 1 Dillon on Muni. Corp. (3d Ed.) §§ 27, 66, and cases cited in note; *Western Sav. Fund Society v. City of Philadelphia*, 31 Pa. 175, 72 Am. Dec. 730; *City of Indianapolis v. Indianapolis Gas Light & Coke Co.*, 66 Ind. 396; *N. O. Gas Co. v. La. Gas Co.*, 116 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Louisville Gas Co. v. Citizens' Gas-Light Co.*, 115 U. S. 683, 6 Sup. Ct. 265. 29 L. Ed. 510; *N. O. Waterworks v. Rivers*, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; *St. Tammany Waterworks v. N. O. Waterworks*, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563; *City of Selma v. Mullen*, 46 Ala. 414; *City of Greenville v. Greenville Waterworks*, 125 Ala. 627, 27 South. 764. The charter of the city of Gadsden confers ample powers to authorize the making of this contract. Acts 1882-83, p. 298, § 22. At any rate this is one of the incidental powers of a municipal corporation.—1 Dillon on Muni. Corp. (4th Ed.)

§§ 146, 443, note 1; *Livingston v. Pippin*, 31 Ala. 542, 550, 551.

There being no limit by constitution, or statute, as to the length of time for which such contracts may be made, the court cannot say that the time fixed by this contract is unreasonable. On the contrary, it is common knowledge that it requires a considerable outlay of money to construct a system of waterworks, and a considerable part of the material is buried under the surface of the ground, so that no arrangement could be made for the construction of such a system, unless the contract be allowed to run for a number of years, so as to offer the hope of realizing something on the enterprise. While it is true that the providing of pure and wholesome water is an important department of the duties of a municipal corporation, yet the authorities cited and many others are conclusive to the effect that the corporate authorities are intrusted with the discretion to determine how that can be best done, and if they find it to be to the best public interest to enter into contracts carefully guarded for the accomplishment of that end they have the right to do so. Without going into all of the details, the contract makes all necessary provisions to secure the purity and wholesomeness of the water, the strength and quality of the mains, provides for testing to the satisfaction of the mayor and aldermen, and also reserves the power in the mayor and aldermen to revoke the franchise upon failure of appellee to comply with the requirements of the contract.

As to the objection based on the principle that one seeking injunctive relief based on a contract must show that he has performed his part of the contract, it is sufficient to say that the contract in this case does not prescribe the order in which work shall be done, nor make it necessary for complainant to purchase machinery, etc,. before laying the pipes. The contract being still in force, and the complainant having a right to demand that the streets be designated in which pipes are to be laid or conduits built, also to have designated the location of the 60 hydrants, and it being impossible for complainant to prosecute its work until those things are done, mandatory injunction is the proper remedy, and complainant

is entitled to the same.—16 Am. & Eng. Ency. Law (2d. Ed.) 342.

But, as to the other prayer of the bill, that the defendant be enjoined from building a system of waterworks, that part of the original contract which attempted to make the franchise granted exclusive is violative of section 22 of the constitution of Alabama, and therefore incapable of enforcement, and, in addition to that, it has been eliminated from the contract by the amendment agreed to.—*Birmingham & Pratt Mines St. Ry. Co. v. Birmingham St. Ry. Co.*, 79 Ala. 465, 473-475, 58 Am. Rep. 615. That portion of the contract which is valid may be enforced, while that which is not, cannot be enforced.—*Ill. Tr. & Sav. Bank v. Arkansas City.* 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, 524; *Monroe Waterworks Co. v. City of Monroe,* (Wis.) 85 N. W. 685; *City of Quincy v. Bull,* 106 Ill. 337, 352; *Clarksburg Elec. St. Ry. Co. v. Clarksburg,* (W. Va.) 35 S. E. 994, 50 L. R. A. 142.

There is nothing in the suggestion that Weller was not a proper party. Although the contract was made with Mitchell "and his associates," etc., yet the bill alleges that the contract was made with Mitchell & Weller, and that Weller was his only associate.

The decree of the court is affirmed.

WEAKLEY. C. J., and TYSON and ANDERSON, JJ., concur.