## Willis v. Calhoun, et al.

(Decided October 27, 1911.)

## Appeal from McLean Circuit Court.

1. Ferry—Notice.—Where an applicant for a ferry franchise posted a notice that he would apply for a ferry between points on the river where a ferry then existed, and these facts appeared in his notice, it was insufficient to authorize the court to grant an original ferry license; and, as there was no attempt to show under section 1820 of the Kentucky Statutes, that the established ferry, which was within a city, could not properly do all the business, or that public convenience greatly required a new ferry, the ferry franchise was properly denied.

.2 Ferry—Reservation of in Sale.—Where the owners of the land to which the ferry was appurtenant, laid it out into city lots and dedicated that portion of the land which bordered on the river to the city for wharf purposes, and reserved the ferry rights, the grantor retained the fee in the wharf and the ferry right that was appurtenant thereto.

3. Same—Abandonment of.—Where ferry rights were granted by different counties, bordering upon opposite sides of a river, and those portions of the two counties which contained the ferry were subsequently incorporated into a newly created county, and the owners of the ferries had their ferry rights recognized and recorded in the county court of the new county, it was not an abandonment of their original ferry.

4. Same—Lease of Ferry Rights Without Consent of County.—Where a statute requires the sale or lease of a ferry right to be made only with the consent of the county court, and such sale or lease is made without the county court's consent, the ferry franchise is not thereby forfeited or revoked. It is merely revocable by the county in a direct proceeding for that purpose.

5. Same—Costs.—Where the opposers to the granting of a ferry claim to own an existing ferry between the same points and are made parties to the proceeding, and successfully contest the mover's right to a ferry franchise, they are entitled to their costs against the unsuccessful mover.

CLARK & STROUD, MILTON CLARK, M. M. LOGAN, ORA E. HAZELIP, BEN D. RINGO, HUBERT MEREDITH and TAYLOR & CLARK for appellant.

WILLIAM B. NOE, JOE H. MILLER and SWEENEY, ELLIS & SWEENEY for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action involves the ferry right over Green River between Calhoun and Rumsey, in McLean County. The appellee, Margaret Calhoun, claims to own the ferry privilege upon the Rumsey or southern side of the river, while the appellee, Irene Gates, and her children, claim to own that right upon the Calhoun or northern side of the river. The appellees claim their respective rights by virtue of a complete chain of title from the Commonwealth for lands bordering upon the river over which the ferry is operated. These titles are complete, and the appellees were thereby invested with their respective properties, and the ferry privileges appurtenant thereto, and still own them unless those privileges have been lost or divested by subsequent conveyances.

Until 1854, Green River, at this point, formed the boundary line between Daviess County on the north, and Muhlenberg County on the south. In 1835 the ferry from the Rumsey side of the river was granted to Dillis Dyer and James R. Skiles, the then owners of the land bordering on the river, by the Muhlenberg County Court. The town of Rumsey was subsequently incorporated in 1839. In 1841 the remote vendors of Mrs. Gates obtained from the Daviess County Court the ferry right from the north bank of Green River in the present town of Calhoun, which was subsequently incorporated in 1852. As successive vendees of the lands and ferry rights upon either side of the river, the appellees, Mrs. Calhoun and Mrs. Gates and their vendors, have continuously held the ferry rights and operated the ferry since it was created.

In 1854 McLean County was created out of portions of Daviess, Hopkins, Muhlenberg and Ohio counties, and the territory upon which Rumsey and Calhoun are situated was included in the new county of McLean. Under this state of case, and while the appellees were in the undisturbed possession of their ferry rights, the appellant, Willis, in 1909, posted the following notice at the courthouse door of McLean County:

"I, J. S. Willis, do hereby give notice that I will, on Monday, the 1st day of November, 1909, that being the first day of the regular November term, 1909, of the McLean County Court, move said court to grant to me a right, privilege, or franchise to operate a ferry across Green River from the present ferry landing in the city of Calhoun to the opposite bank in the town of Rumsey; and from the present ferry landing in the town of Rum-

sey, to the opposite bank in the city of Calhoun for a period of twenty years from the date of the granting of the franchise.

This the 4th day of October, 1909.

"J. S. WILLIS."

Sections 1802, 1803, 1804 and 1806 of the Kentucky Statutes, read as follows:

"1802. No ferry right shall be hereafter granted for a longer period than twenty years."

"1803. A ferry shall be established at the instance and for the benefit of the owner of the land on which it is located, or of some one who has obtained from the owner the privilege of using the same for that purpose."

"1804. No application to establish a ferry shall be heard, unless notice of the application shall have been posted at the courthouse door of the county on the first day of the term of the court next preceding that at which the application is made."

"1806. If no owner of the land on either side of the stream over which a public highway passes will obtain the ferry right, or if, after having obtained the right, he abandons or fails to keep it up according to law, the court may, after reasonable notice, grant the right to another; and when necessary to the proper exercise of the right by such other, cause to be condemned the fee-simple right, or the use for not more than twenty years, if the owner so elect, of not more than two acres of ground adjoining the landing, together with the use, for ferry purposes, of any adjacent uninclosed bank of the stream. But before the final grant of the right, the damage to the owner of the land shall be first ascertained under a writ of ad quod damnum, and the amount thereof paid into court for the use of the owner."

The notice was given pursuant to section 1803, and when the application came on for trial on November 1st, 1909, appellant filed what is termed an "Application for ferry license," in which he alleged that he was the owner of a landing on Green River at the foot of Ferry street in the city of Calhoun, embracing a water front of sixty-six feet on said river, by virtue of a lease from the city council of the city of Calhoun for a period of twenty years for ferry purposes; and further, that he was the owner of a landing on Green River at the foot of and extending east of Poplar street in the town of Rumsey, embracing about a hundred feet of the water front on

said river, by lease from the board of trustees of the town of Rumsey for a period of twenty years, for ferry purposes. He further alleged that said two landings are opposite to each other, one on the north side of Green River, and the other on the south side of said river. The application set forth the posting of the notice, and its contents; the applicant's ability and willingness to execute a bond as required by law, and his ability to properly conduct a ferry between the points indicated, if the license should be granted to him. Evidently appellant intended that the application for a license should serve the purposes of a petition, and that the notice the purposes of a summons. The appellees intervened by written pleadings, in which they set up their respective rights to the ferry, and contested appellant's application for a license.

The county judge refused to grant the license and dismissed the application; and, upon an appeal to the McLean Circuit Court, that court affirmed the judgment of the county court. Willis appeals.

1. Appellees' first contention is, that the notice is the basis of the proceeding, and is fatally defective for three reasons. The first objection to the notice is that it does not show that Willis is the owner or lessee of the land at the point where he proposes to establish a ferry, or that he has the permission of the owners of the land to establish a ferry at that point; but, on the contrary, it rebuts that presumption by saying that Willis proposes to establish a ferry at the point where the present ferry exists. It is contended that this statement upon its face, puts appellant out of court because it amounts to an admission that appellees own the land and the ferry privilege as at present established, and at the point where appellant proposes to establish his ferry. It is further contended that when an applicant applies for a ferry, he must state in his notice that he is the owner of the land at the point where the ferry is to be established, or is the lessee thereof, or has permission from the owner of the land to use it for that purpose, none of which facts are shown by Willis' notice, and that these facts are jurisdictional; and, finally, that the notice is defective because it shows that the proposition is to establish a ferry within the corporate limits of two towns in violation of sub-section 1 of section 1820 of the Kentucky Statutes, which provides that—

"No new ferry shall be so granted within a city or town unless those established therein can not properly do all the business, or unless public convenience greatly requires a new ferry at a site not within four hundred yards of that of another."

It is easily apparent that it was not the purpose of the notice to establish a rival ferry under the statute last quoted, but to supplant the existing ferry by establishing another ferry in lieu of it at the precise site of the existing ferry, and within the corporate limits of two towns. There is no claim in the notice, application, or proof, that the existing ferry cannot properly do all of the business, or that the public convenience requires another ferry. On the contrary, appellant's contention is that appellees have no ferry right between Rumsey and Calhoun. The appellant can prevail only upon the strength of his own title; being the plaintiff, he can not ask a judgment in his own behalf unless he shows that he is entitled to it under the law and the facts of his case. If, therefore, his notice was insufficient, that was ample reason for dismissing his application.

It is unnecessary to consider the sufficiency of the notice in all of the aspects presented by the appellees, since we are of opinion that it may be disposed of in a more summary way. Appellees raised the question of the sufficiency of the notice by demurring to it, but the demurrer was overruled.

Sub-section 1 of section 624 of the Code of Practice provides as follows:

"The notices mentioned in this Code must be in writing, must concisely state the purport thereof, and may be served by an officer who is authorized to serve a summons, or by any person who is over the age of sixteen years and not a party to, nor interested in, the action."

Under the authority of Terrill v. Cecil, 3 Met., 347, Johnson v. Bradley, 11 Bush, 667, and Bunnell v. Thompson, 12 Bush, 116, it is insisted that the notice takes the place of a petition, and to be sufficient, it must set out and state the facts entitling the plaintiff to the relief demanded. Without going into that question, however, we think the notice is clearly insufficient, if not suicidal in its terms, for the reason that it proposes to establish a ferry on the site of the present ferry, thereby recognizing the existence of the ferry of the appellees. The ferry

applied for under this notice could be granted only under sub-section 1 of section 1820 of the Kentucky Statutes above quoted; and after proof establishing the facts of inability on the part of the present owners of the ferry to properly serve the public, along with the further fact that the public convenience required a new ferry. But, as none of these facts have been shown, or even attempted to be shown, appellant's motion for a license was properly overruled for the want of proof to support his notice. Appellant tried his case upon the theory that appellees had no ferry—a fact that is contradicted by appellant's own notice to the effect that there was an established ferry in existence. This opinion might end here; but, inasmuch as the litigation might be renewed upon a new notice, we think it advisable and to the interest of all parties concerned, to pass upon the merits of the case as presented by this rather full preparation of it.

2. Appellant contends that appellees have parted with whatever ferry franchises they had by reason of the fact that they have sold their lands bordering upon the river, and to which the ferry right was appurtenant; and, to show a right in himself to acquire a ferry under section 1803 of the statute above quoted, appellant filed two leases, one dated September 8th, 1909, from the city council of Calhoun, and the other dated August 30th, 1909, from the board of trustees of the town of Rumsey, wherein said town leased to the appellant, for a period of twenty years, the water fronts and wharf property of the respective towns. When Skiles and Dyer, however, laid off and plotted the town of Rumsey in 1839, four years after they had acquired their ferry privilege from Muhlenburg County, they made the following reservation in their dedication:

"The public landing shall embrace all the ground from Canal street to the water edge, and extend from the southwest side of Sycamore street up the river to the end of Canal street and is hereby perpetually granted to the town of Rumsey, as a public wharf, to be under the control of the properly constituted authorities of said town, for the use and benefit of said town exclusively, save only ferry privileges of taking in and putting out anywhere upon said landing or wharf, passengers and crossing the river, or any other advantages which belong to ferries according to general usage, which the proprietors hereby reserve to themselves."

The effect of this dedication was to give to the town of Rumsey the use of the river front for a public wharf, expressly reserving to the grantors the use of the landing and wharf for ferry privileges. Furthermore, Mrs. Calhoun still owns a town lot adjoining this ferry and fronting upon the street which runs parallel with the river, and divides her property from the public wharf. There can be no doubt that the fee to the land constituting the public wharf running down to the river remained in Skiles and Dyer, and that the only use the city took therein under said dedication was for wharf purposes. This is the only title the town of Rumsey had to the land on the river front, which it has leased to Willis. The grant of a ferry right is a contract between the person to whom it is given and the State, and prior to the statute of 1851 which limited the duration of such franchises to twenty years, all grants, unless it was otherwise specifically provided therein, were perpetual. Dufour v. Stacy, 90 Ky., 288, and Carter v. Calfus, 6 Dana, 43.

The ferry upon the northern or Calhoun side of the river, and now owned by Mrs. Gates, was granted in 1841 before the town of Calhoun was incorporated. In 1850, two years before its incorporation, John Calhoun and the other owners of the land and ferry right upon the northern side of the river, sold to James Landrum the tract of land bordering on Ferry street, "together with the privilege of ferry on the front of the five hundred acre survey, which includes the city of Calhoun—to have and to hold said lot and right of ferry on the said five hundred acre survey to him, the said James Landrum, his heirs and assigns now and forever." James Landrum continued to operate the ferry until his death, a period of about twenty years. The property thus owned by James Landrum at the time of his death became vested in Corrilla Hawes in 1882, and she maintained and operated the ferry under the grant of 1841 until her death in 1890. Corrilla Hawes was the mother of the appellee, Mrs. Irene Gates; and by her will Mrs. Hawes devised to her daughter, Irene Gates, her "interest in the ferry grant across Green River from Calhoun to Rumsey in McLean County, Kentucky; to be used and enjoyed by her during her life, with remainder in fee simple to the children of her body." The appellees, L. W. Gates and Mary C. Downey are the only children of Irene Gates, and will take as remaindermen under their grand-

mother's will. It thus appears that the appellees have not only a complete paper title to the land and ferry rights appurtenant thereto upon either side of the river, but that they, and their predecessors in said title, have maintained and operated this ferry without interruption ever since it was created under the grants of 1835 and 1841, respectively.

3. But, it is contended that the predecessors of the appellees in ownership abandoned their perpetual grant to this ferry in 1854, by obtaining from the McLean County Court a new ferry franchise. It will be remembered that McLean County was created by an Act of the General Assembly passed in 1854. At that time James Landrum and James M. Bell owned the ferry rights. At the first county court held in the new county on November 6th, 1854, Landrum obtained a recognition or renewal of his ferry right, in the shape of the following order entered by the McLean County Court:

"On application of James Landrum the right of ferry is granted across Green River at Calhoun and Rumsey, upon the Calhoun side; thereupon he came into court and entered into bond with Elisha Baker as his surety. Said Landrum is ordered to keep a substantial ferryboat, with railing and skiff to be propelled by oars."

A similar order was entered as to Bell's right of ferry from the Rumsey side. It is contended that these orders operated as a renunciation or surrender of the perpetual rights previously acquired by the vendors of the appellees to the ferry right and franchise in question, and granted new ferry rights which expired in 1874—twenty years thereafter. It will be remembered, however, that when the Rumsey ferry was established in 1835, the land upon which Rumsey was situated was then a part of Muhlenberg County; and when the ferry was established from the Calhoun side in 1841, that land was in Daviess County. When McLean County was subsequently created in 1854, so as to embrace within its boundaries the two towns of Calhoun and Rumsey, it was not only proper but incumbent upon the owners of this ferry franchise and privilege to apply to the county court of the newly established county of McLean to certify and perpetuate upon its records the fact that these ferry privileges existed. The law not only required of the owners of a ferry a renewal of their bond from time to time, under penalty of forfeiture but it also gave to

the county court the right to fix the fees which they could lawfully charge in conducting the ferry. It was, therefore, of the utmost importance, both to the owners of the ferry franchise and to the public, that the owners of the ferry should appear in the McLean County Court and thus submit themselves to the jurisdiction of the new county, where they might renew their bonds from time to time, and give the new county jurisdiction to fix rates of ferriage. Landrum and Bell did not proceed by giving the usual notice which is required in cases of application for an original ferry franchise; they merely transferred the record of their ferry franchises to the new governing county for business purposes. This summary proceeding shows beyond a doubt that there was no intention upon the part of either Landrum and Bell on the one side, or of the county court on the other, of surrendering the old ferry franchises. The subsequent failure of the county for a period of more than fifty years to take any hostile step against appellees would seem to be conclusive of the correctness of this view. Furthermore, sections 1811 and 1812 of the Kentucky Statutes, provide what acts shall constitute an abandonment, in the following terms:

"1811. A failure for one year to keep up any ferry heretofore or hereafter granted, in the manner required, shall be deemed an abandonment of the grant, and, upon notice to the owner, it may be revoked."

"1812. Any sale or leasing of a ferry right hereafter made to, or contract not to use it made with, the owner of a ferry established within a mile thereof, or any tenant or partner of his, or with any owner, tenant or partner of a ferry established on the other side of the Ohio or Mississippi, shall be deemed and treated as an abandonment of such right, for which the franchise may, in like manner, be revoked."

It would be an unreasonable and unusual construction of these orders to hold that appellees intended, by having the county court of the new county of McLean recognize their right and continue their ferry, that they thereby intended to surrender a perpetual grant which they then undoubtedly owned, and without any consideration whatever therefor. If there could be any doubt upon this question we think it will be dispelled by the reasoning of the opinion in the case of the Town of Golconda v. Field, 108 Ill., 422, where the precise question

here involved was decided adversely to the contention of the appellant. In that case Field had, in 1823, obtained a perpetual franchise to operate a ferry across the Ohio River; and subsequently, in 1859, he procured the passage of a special act of the Legislature authorizing him to establish and keep a ferry at the same place for twenty years, which he did. In 1879 the county board issued a license for a ferry between the same points to John, who sold and conveyed his ferry right to the town of Golconda. In upholding Field's title to his ferry the court said:

"The argument is that John Field having recognized the act of 1859, and acted under it, he and the other complainants are estopped from claiming any rights other than those granted by that act of the Legislature. The doctrine of estoppel is not applicable to a question of this character. In Herman's Law of Estoppel, page 8, the author says: 'The very nature of an estoppel is when an admission is intended to lead, and does lead a man with whom a party is dealing, into a line of conduct which must be prejudicial to his interest, unless the estopped party be cut off from the power of retraction.' There was no admission or line of conduct by the complainants which would enable the defendants in this case to invoke the law of estoppel. The complainants owned a ferry franchise, which they had a right to enjoy and use, until they should commit some act which might authorize the State to interfere and forfeit the franchise. While in the enjoyment of this right the act of 1859 was enacted, by the Legislature which conferred a franchise for twenty years, but this act conferred no additional rights upon complainants. At the time the act was passed they had, under the law of the land all that the act of 1859 professed to confer, and much more, and we are unable to perceive how it is that complainants lost all rights held by them under the grant to Daniel Field in 1823, and confirmed by the act of 1827 by merely accepting the provision of the act of 1859.

"Suppose a certain person is in the possession of a tract of land under a regular chain of title from the government; another person holds a tax title on the land, which the owner in possession buys, and obtains a deed. Is the owner when his title may be called in question estopped from asserting title to the land from the government, from the fact that he purchased an outstanding

tax title, and after the purchase occupied under such title in connection with the original title? Surely not; and yet there is no substantial difference between the supposed case and the position of complainants. The complainants, when the act of 1859 was passed, were in the possession of the ferry franchise, which had been conferred originally on Daniel Field and descended to them. They had an undoubted right to hold and operate the ferry under the original grant. They did no act indicating an intention to abandon title to the ferry, but when the act of 1859 was passed they accepted its provisions and held under it in connection with the original title. We do not think they waived any rights held under the orginal grant by accepting the provisions of the act of 1859, nor were they estopped from claiming under the original grant. If they thought the act of 1859 might strengthen their title to the ferry we perceive no reason which would preclude them from accepting its provisions, and at the same time retain the original title held by them when the act of 1859 was passed.''

4. Appellant further contends that if the proceedings in the McLean County Court in 1854 were not a surrender by appellee of their perpetual franchise, they have, nevertheless lost their franchise and property because some of the sales or leases of the ferry rights by their remote vendors were made without the consent of the county court, as is authorized and required by section 1808 of the Kentucky Statutes, which reads in part, as follows:

''1808. Every owner of a ferry may be required by the county court to give a new bond in conformity herewith; and if he shall fail to do so for six months after summons his ferry right shall be revoked.

''1. Every ferry covenant shall be renewed once in five years, and oftener if required by the court; and upon failure to do so after summons, the ferry right shall be revoked. * * *

''2. When sale is made of a ferry right, or lease thereof, it must be with leave of the court and the purchaser or lessee must execute covenant, with sufficient surety, in lieu of the former covenant. * * * Upon failure to comply with any requisition of this sub-section, the court shall revoke the grant, the party having been first summoned, or, if a non-resident, warned by an order posted at the courthouse door, on a court day of a pre-

vious term, and by publication in some newspaper printed in the county, if any such there be.''

The last order by the McLean County Court with respect to this ferry franchise was entered April 16th, 1910, and recites that appellees, Mrs. Calhoun and Mrs. Gates, were the owners of said ferry franchise, and it consented that they might lease the same to A. W. Crunk until the 31st day of December, 1910. It goes further and approves the ferry bond of Crunk as the lessee of appellees.

In Hazelip v. Lindsey, 93 Ky., 17, this court said:

''It is unnecessary to consider whether the lease of the ferry is void because not made by leave of the county court. The execution of a bond by the appellee in March, 1881, should, perhaps, be regarded as an approval of it by the court, and as the bond of the appellee as a lessee, as provided by the statute.''

Moreover, a ferry right is property, of which the owner will not be divested by mere implication. Chancellor Kent says:

''The obligation between the government and owner of such franchise is mutual. He is obliged to provide and maintain facilities for accommodating the public at all times with prompt and convenient passage. The law, on the other hand, in consideration of this duty, provides him a recompense by means of an exclusive toll. An estate in such ferry and an estate in land rest upon the same principle, being equally grants of a right or privilege for an adequate consideration.'' (3 Comm., 459.)

And in Conway v. Taylor, 1 Black, 603, the Supreme Court of the United States said:

''A ferry franchise is as much property as a rent or any other incorporeal hereditament, or chattels, or realty. It is clothed with the same sanctity and entitled to the same protection as other property.''

As was aptly said in one of the older English cases, a ferry is a franchise and a flower of the Crown, which a private man can not set up without a license. Being property, it needs no citation of authority to satisfy one that it can not be revoked or taken without due process of law; and due process of law in a case of this character requires a direct proceeding for that purpose and upon notice. Combs v. Sewell, 22 Ky. Law Rep., 1029. The question of the forfeiture of a ferry right can not be

raised collaterally, or by a stranger.   Owens v. Roberts, 6 Bush, 608.

In Brown v. Given, 4 J. J. M., 29, a county court summarily discontinued a ferry because the owner was a non-resident, and his ferry was not kept agreeably to law.  In holding that this was a nullity, this court said:

"There is nothing in the record which shows that Brown has ever been legally divested of the right to the ferry granted to him in 1811.  If, by non-user or otherwise, he had subjected that right to forfeiture, the fact should be ascertained by an appropriate judicial trial."

Paynter v. Miller, 118 Ky., 35, is to the same effect.

In the case at bar, however, there has been no attempt upon the part of the county or others to forfeit appellees' ferry; on the contrary, whatever acts have been taken in this connection by the McLean County Court have been in recognition of the existence of the ferries in question. In Gates v. Commonwealth, 127 Ky., 395, decided December 3rd, 1907, this court held the right of the State to tax this ferry franchise in the hands of Mrs. Gates' lessee; and as late as March 18th, 1911, this court, in the case of Calhoun and others v. Alexander, County Attorney, 143 Ky., 53, recognized the right of the McLean County Court to fix the tolls to be charged at this particular ferry.

Not only has the existence of these ferry rights never been successfully contested, but McLean County and this court having repeatedly recognized them to the fullest extent, they can not be forfeited or revoked indirectly in a proceeding of this character.

5. The costs were properly taxed against the appellant.  Ackler v. Oldham, 1 A. K. M., 471, relied upon by appellant as authority against the judgment awarding appellees their costs, held that no costs should be given against one who successfully opposed the establishment of a ferry.  But here appellant was the successful mover for the ferry and appellees were the opposers.  Claiming to own the ferry they were made parties to the action, and they and appellant tried out their respective rights in the usual way, thus bringing the parties within the scope of sections 889 and 898 of the Kentucky Statutes, which give costs to the successful party.

The judgment of the circuit court was right, and is affirmed.