27 So.2d 565

CITY OF BESSEMER v. BIRMINGHAM ELECTRIC CO.

6 Div. 405.

Supreme Court of Alabama.
March 28, 1946.

Rehearing Denied Oct. 24, 1946.

Wm. S. Pritchard, of Birmingham, H. P. Lipscomb, Jr., of Bessemer, and Victor H. Smith, of Birmingham, for appellant.

White, Bradley, Arant & All, of Birmingham, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court sustaining the demurrer to the bill of complaint. In its bill of complaint the City of Bessemer (appellant) seeks a decree adjudging that the Birmingham Electric Company (appellee) has no franchise to maintain its poles, electric wires and properties in the streets, alleys and public places of appellant, and to conduct its electric distribution business within its limits. The decree which the City of Bessemer seeks would also order appellee to cease doing business within its limits and compensate appellant for the unlawful use of its streets and for certain other damages alleged to have been suffered.

The question for decision is whether appellee has a valid and subsisting franchise to operate its electric light system within the corporate limits of appellant and to use its streets and public places for such purpose over the objection of appellant.

The bill of complaint alleges in substance the following: On April 15, 1890, an ordinance was adopted by the Mayor and Board of Aldermen of the City of Bessemer, a copy of which is attached to the bill and made a part thereof. This ordinance "grants to Bessemer Electric

Company and to their associates and assigns" permission and authority to use the streets, alleys, etc., of the City, as then or as it might thereafter be laid out, for the purpose of conveying through the city electricity for light and power to the city and its inhabitants; and a "right-of-way" was given through the streets etc. for erecting the necessary poles and wires, etc., for such purpose.

On December 3, 1901, there was filed for record a conveyance to Birmingham Railway, Light & Power Co. from Bessemer Electric Company of the right and privileges of the latter to operate within the corporate limits of appellant. On November 12, 1901, an ordinance was adopted by the City of Bessemer and became effective after publication on November 25, 1901. This ordinance, a copy of which was attached to the bill and made a part thereof, ratifies and confirms the franchise of the Bessemer Electric Company granted by the ordinance dated April 15, 1890, and authorizes and empowers Birmingham Railway, Light & Power Co., to receive from Bessemer Electric Company by assignment, transfer or conveyance its franchise and all its rights and privileges enjoyed by it under its franchise.

On June 26, 1907, Birmingham Railway, Light & Power Co. executed a mortgage to secure an indebtedness therein described and among other properties conveyed its rights under the ordinances of April 15, 1890, and November 12, 1901. This mortgage was foreclosed on April 27, 1924, and at the foreclosure sale appellee purchased and thereby acquired the rights of Birmingham Railway, Light & Power Company under the said ordinances and the aforesaid assignment. Appellant never consented by any ordinance to the purchase or acquisition by appellee of any franchise rights owned by Birmingham Railway, Light & Power Co. Appellant was not a party to the foreclosure proceedings.

On April 1, 1941, and continuously for a number of years prior thereto and continuously thereafter to and including the date on which the bill of complaint was filed, the appellee has maintained its electric poles, wires, etc., upon the streets, alleys, etc., of appellant and has been engaged within its corporate limits in selling and distributing electric current to its inhabitants.

On June 4, 1940, the City Council of Bessemer adopted a resolution directing the mayor to demand of appellee that it remove its properties from the streets, alleys, etc., of the city and cease doing business therein. On April 1, 1941, the City Council of Bessemer adopted an ordinance No. 867 which is attached to the bill of complaint and made a part thereof. This ordinance recites that appellee never had a valid franchise to use the streets, etc., of appellant, that the physical properties of appellee constitute a nuisance and unlawful obstruction and use of its streets and cancels, annuls and revokes any right or franchise to use the streets, etc., which appellee might claim.

It is obvious that the ordinance of April 15, 1890, seeks to grant a perpetual, irrevocable franchise, because there is no limitation as to time or right of revocation contained therein. Can we accordingly say that at the time this suit was brought the appellee was operating in the City of Bessemer under a valid and subsisting franchise? And are the rights, if any, of appellee adversely affected by the ordinance of November 12, 1901, or the ordinance of April 1, 1941? We think that the franchise granted by the ordinance of April 15, 1890, is valid and subsisting, is now owned by appellee and that neither the ordinance of November 12, 1901, nor the ordinance of April 1, 1941, affects this conclusion. We shall undertake to set out the successive steps in the reasoning by which the conclusion is reached.

■ (1) It is clear to us that the grant of the franchise under the ordinance of April 15, 1890, was a grant of a property right of a contractual nature. Since it was accepted and acted upon, it is not subject to impairment by subsequent legislation or municipal action, unless it is affected by constitutional provisions to which we shall later refer. In the case of Town of New Decatur v. American Tel. & Tel. Co., 176

Ala. 492, 58 So. 613, 623, Ann.Cas.1915A, 875, Mr. Justice Mayfield said:

"A municipal ordinance granting a particular telegraph or telephone company authority to construct and maintain lines on its streets without limitation as to time, and for a consideration stipulated, when accepted and acted on by such company by compliance with all the conditions imposed, and having constructed valuable plants in pursuance of such authority granted, thereby acquires the features of a contract which the city cannot thereafter abolish or alter in any essential manner without the consent of said company."

And in the same case Mr. Justice Sayre quoted with approval the following from Dillon's Municipal Corporations (3 Mun. Corp. § 1269):

"These franchises are property which cannot be destroyed or taken from the grantee or rendered useless by the arbitrary act of the municipal authorities in preventing the grantee from using the city streets for the purposes of the grant, although the municipality may seek to justify such act as an exercise of the police power."

And in the same case Mr. Justice, late Chief Justice, Anderson, said:

" * * * Therefore, if the grant was authorized, as my Brothers hold, then it became a contract, and as such it has always been protected from impairment by the federal and state Constitutions, each of which prohibits the passage of any law by which the obligation of any existing contract is impaired or lessened. * * * "

And in Phenix City v. Alabama Power Co., 239 Ala. 547, 195 So. 894, 897, Mr. Justice Foster said:

"A franchise grant * * * is the creation of a property right, and is more than mere legislation."

See also Mobile v. Louisville & N. R. Co., 84 Ala. 115, 4 So. 106, 5 Am.St.Rep. 342; People v. O'Brien, 111 N.Y. 1, 18 N.E. 692, 2 L.R.A. 255, 7 Am.St.Rep. 684; Louisville v. Cumberland T. & T. Co., 224 U.S. 649, 32 S.Ct. 572, 56 L.Ed. 934.

■ (2) And the consideration for the grant of such franchise is the benefit which the public derives from the use and exercise of the franchise. Town of New Decatur v. American Tel. & Tel. Co., 176 Ala. 492, 58 So. 613, Ann.Cas.1915A, 875; Phenix City v. Alabama Power Co., supra; Mobile v. Louisville & N. R. R. Co., supra.

■ (3) The grant in the ordinance of April 15, 1890, according to its terms, runs "unto Bessemer Electric Company * * *, and to their associates and assigns." Since under the authorities the street franchise constitutes a right in land, viz., an easement or incorporeal hereditament, it follows that it is not personal and may be alienated. In Town of New Decatur v. American Tel. & Tel. Co., supra, as against the contention that the rights acquired under the franchise ordinance were "incapable of assignment," Mr. Justice Mayfield said:

" * * * A corporation cannot absolutely nor conditionally alienate or assign its franchise of being a corporation; but it can alienate or assign its franchises which are in the nature of property, even though it acquire the same from the state. * * * "

In the foregoing case the Telephone Company had no standing in court except as the assignee and owner of the franchise granted to its predecessor in title. The court could not have reached its decision unless the franchise involved was capable of assignment. See also Louisville v. Cumberland T. & T. Co., supra; Phenix City v. Alabama Power Co., supra; People v. O'Brien, supra.

■ (4) The allegations in the bill show that the franchise involved passed through mesne conveyances into appellee. There is nothing to show that these conveyances are illegal or invalid. So it is clear that appellee is now the owner of whatever rights were granted under the ordinance of April 15, 1890.

■ (5) As pointed out, the grant under the ordinance of April 15, 1890, contains no limitation as to time. Omitting consideration for the present of the effect of constitutional provisions, the grant must be considered as a conveyance in perpetuity. The annotator in 71 A.L.R. p. 121, states the principle as follows:

"It is accepted by the overwhelming weight of authority that, in the absence of special circumstances or language in the grant, indicating a temporary and revocable authority, a street franchise, silent as to the term of its duration, is, in view of the enormous expense incident to its exercise, and the improbability that the parties would undertake the consummation thereof except for its continued existence, not a mere license, revocable at the will of the grantor, but a contractual and proprietary right, immune from any interference or impairment."

In the case of Town of New Decatur v. American Tel. & Tel. Co., supra, Mr. Justice Sayre said of a grant by municipal ordinance of the right to construct and maintain lines of telephone in a street:

"Being without limitation as to duration, it was a grant in perpetuity, for the court cannot undertake to make a contract for the parties by assigning a term to the grant."

In Owensboro v. Cumberland T. & T. Co., 230 U.S. 58, 33 S.Ct. 988, 990, 57 L.Ed. 1389, the Supreme Court of the United States said:

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the city making the grant."

See also Phenix City v. Alabama Power Co., supra; Phenix City v. Southern Bell T. & T. Co., D.C., 33 F.Supp. 283; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L.Ed. 1410; Louisville v. Cumberland T. & T. Co., 224 U.S. 649, 32 S.Ct. 572, 56 L.Ed. 934, 940, 941; City of Detroit v. Detroit Citizens St. Ry. Co., 184 U.S. 368, 22 S.Ct. 410, 46 L.Ed. 592, 610-611; People v. O'Brien, 111 N.Y. 1, 18 N.E. 692, 693, 697, 698, 2 L.R.A. 255, 7 Am.St.Rep. 684.

(6) This brings us to a consideration of the power of the City of Bessemer under its charter to grant the franchise of April 15, 1890. For the moment we shall discuss the matter apart from constitutional provisions. On April 15, 1890, the City of Bessemer existed under a charter conferred upon it by an Act of the General Assembly approved December 12, 1888. Among other things, Section 21 of that act contains the following:

"* * * That the said mayor and aldermen shall have full and complete power (1) To make, adopt and declare motions, resolutions, by-laws and ordinances, in the manner hereinafter provided, upon whatever subject they see fit, to carry out the powers herein granted, and for the good government and order of said city, * * * (10) To sink, repair and regulate public wells and cisterns, to establish and regulate fire-plugs, and public hydrants, and to make all needful provisions for the supply of the city with water, gas and gaslights, electric and other lights and to control street lamps. (11) To establish streets, avenues and alleys, and regulate and control the paving, and curbing of streets and sidewalks and the giving of the grade thereof * * *."—Acts 1888–89, General Assembly of Alabama, p. 185, 196, 197).

It is elementary that, in addition to the powers expressly conferred on them by the legislature, municipal corporations have, by implication, all powers reasonably necessary to the carrying out of those powers expressly granted, and also, as incidental powers, all powers necessary for carrying out the corporate purposes. McQuillin on Municipal Corporations (2d Ed.) § 373; Intendant & Town Council of Livingston v. Pippin, 31 Ala. 542. In a number of decisions, courts in Alabama and in other jurisdictions have held that statutory provisions similar to those set forth above conferred upon municipalities authority to grant franchises for the use of their streets. It has been indicated, moreover, in at least one Alabama decision (City of Gadsden v. Mitchell, 145 Ala. 137, 157, 158, 40 So. 557, 6 L.R.A.,N.S., 781, 117 Am.St.Rep. 20), that the power to grant such franchises is one of the incidental powers of a municipal corporation.

In Weller v. City of Gadsden, 141 Ala. 642, 37 So. 682, 684, 3 Ann.Cas. 981, it was

held that a charter provision (Acts 1882–83, p. 292, § 22 subs. 10), identical in its terms with subsection (10) of Section 21 quoted above from the Bessemer Charter of 1888, authorized the City of Gadsden to grant the right to operate a waterworks, together with a street franchise. It was there said: .

"Under the Constitution (section 220), and its charter power over its highways and public places (Acts 1882–83, p. 292, s. 22, subsec. 10), the city of Gadsden had authority to grant to complainants the right to construct and operate a system of waterworks, including therein the right to use the streets, etc., for mains, pipes, and hydrants. * * *."

See also City of Gadsden v. Mitchell, supra, dealing with the same ordinance, in which the court said [145 Ala. 137, 40 So. 558]:

" * * * The charter of the city of Gadsden confers ample powers to authorize the making of this contract. Acts 1882–83, p. 292, § 22. At any rate this is one of the incidental powers of a municipal corporation. 1 Dillon on Muni.Corp (4th Ed.) §§ 146, 443, note 1; Livingston v. Pippin, 31 Ala. 542, 550, 551."

In the more recent case of Phenix City v. Alabama Power Co., 239 Ala. 547, 195 So. 894, 896, the Alabama Supreme Court, citing the acts conferring charters upon Girard and Phenix City, held that each of those cities "had the charter power under acts of the legislature of Alabama to grant rights of way along its streets to street railway and electric light companies."

The acts cited by the court as conferring on Phenix City the power to grant rights-of-way along its streets to electric light companies (Acts 1894–95, p. 41; Acts 1896–97, p. 307; Acts 1898–99, p. 1183) contain only one provision relating to the subject of electric lighting, which is as follows:

"The council shall have power and authority to pass' all laws, by-laws and ordinances not contrary to the general laws of Alabama, necessary and effective * * * to provide electric or other lights for said city. * * *." Acts 1894–95, pp. 41, 48, 49.

See also City of Greenville v. Greenville Water Works Co., 125 Ala. 625, 27 So. 764.

■ Accordingly, omitting consideration of constitutional provisions, we conclude that, under the charter powers of the City of Bessemer in existence at the time the ordinance of April 15, 1890, was adopted, the City of Bessemer had ample authority to grant the franchise to the Bessemer Electric Company.

(7) What is the effect of Article I, § 23, Constitution of 1875? It is seriously insisted by appellant that the ordinance of April 15, 1890, is invalid or subject to revocation by reason of this provision of the Constitution of 1875, which was in effect on April 15, 1890, and which we set out as follows:

"That no ex post facto law, or any law impairing the obligation of contracts, or making any irrevocable grants of special privileges or immunities, shall be passed by the General Assembly."

■ Since by its terms the grant of April 15, 1890, is irrevocable, solution of the present problem turns on the meaning of "grants of special privileges." Under the authorities a grant of "special privileges" appears to have reference to a grant of "exclusive privileges," such as monopolies. Since the grant of April 15, 1890, was not in any sense exclusive and a similar grant could be made to others, there was no violation of the aforesaid constitutional provision. In Birmingham & Pratt Mines Street Ry. Co.` v. Birmingham Street Ry. Co., 79 Ala. 465, 58 Am.Rep. 615, this court said:

"What, it may be asked, is the nature of these special or exclusive privileges, which are thus prohibited to be granted by the legislature? It seems plain from the very terms used, that the evil intended to be specially prevented was the granting of exclusive privileges in the nature of a monopoly by the legislative creation of corporate franchises. * * * The very fact that the legislature could, according to the better view, make irrevocable grants of this nature, was the very reason, no doubt, why the organic law was made so as to prohibit such grants in the future.

In the struggling infancy of States and communities, the temptation has been very great to offer them, as a reward to the investment of capital. The injustice and inequality of their operation have only been illustrated in the light of the rapid increase of our population, the steady growth of our wealth, and the wonderful discoveries of modern science. It now more fully becomes manifest that they prove iron bands to fetter the growth of public industry, enterprise, and commerce. Free competition in all departments of commercial traffic is justly deemed to be the life of a people's prosperity. The policy of the law, as now declared by our constitution, is as clear in the condemnation of the grant of irrevocable exclusive privileges conferred by franchise, as that of the common law was in the reprobation of pure monopolies, which were always deemed odious, not only as being in contravention of common right, but as founded in the destruction of trade by the extinguishment of a free and healthy competition."

It will be noticed that this court in the opening sentence of the foregoing opinion said:

"The equity of the complainant's bill in equity depends, in our judgment, upon a single inquiry, and that is, whether the municipal authorities of the City of Birmingham are invested by law with the power to make to the appellee—The Birmingham Street Railway Company—an irrevocable grant of the exclusive privilege to construct and operate a street railway over and through certain streets and avenues of that city."

In our subsequent cases it appears that it has been recognized that the exclusive feature of the franchise was the only feature condemned in the foregoing decision. In Town of New Decatur v. American Tel. & Tel. Co., supra, Mr. Justice Anderson, when he thought his view was the minority view, said:

" * * * I think that the majority misconceive the meaning of section 23 of the Constitution of 1875, and treat it as saying and meaning that the Legislature can grant neither an exclusive nor a perpetual privilege or immunity, when it neither says nor means anything of the sort. There is nothing in the grant that makes it exclusive, and the only theory upon which the majority can read section 23 into the ordinance is that it is perpetual, as no limitation is placed upon the same or no time fixed for the termination of the contract. Section 23 says: 'That no ex post facto law, or any law impairing the obligation of contracts, or making any irrevocable grants of special privileges, or immunities, shall be passed by the general assembly.' It does not say that irrevocable grants cannot be made of privileges not special, but prohibits only irrevocable grants of special privileges or immunities, and which means exclusive privileges or immunities, and does not prevent irrevocable grants of privileges which are not exclusive. 'Special Privilege,' is defined in 36 Cyc. 523, to mean, when used in constitutions, as a 'right, a power, franchise, immunity or privilege granted to, or vested in, a person or class of persons to the exclusion of others and in derogation of the common right.' Our own court, in an able and well-considered opinion, by Somerville, J., in the case of Birmingham Ry. v. Birmingham & Pratt Mines Ry., 79 Ala. 465, 58 Am.Rep. 615, in effect, adopted the foregoing meaning of 'special privileges,' and construed it as meaning exclusive privilege. Says the opinion, after quoting the pertinent part of section 23: 'What, it may be asked, is the nature of these special or exclusive privileges, which are thus prohibited to be granted by the Legislature? It seems plain from the very terms used that the evil intended to be specially prevented was the granting of exclusive privileges in the nature of a monopoly by the legislative creation of corporate franchises.' The ordinance granted the complainant's grantor no exclusive use of the streets for telephone purposes and in no manner created or attempted to create a monopoly, and, as long as it did not do that, the grant could be perpetual without doing violence in the slightest to section 23 of the Constitution of 1875."

In the same case Mr. Justice Sayre said:
"As for the meaning of that provision of the Constitution of 1875, of force at the time this franchise was granted, inhibiting

laws making irrevocable grants of special privileges or immunities, that has been settled by the decisions of this court. In the case of Birmingham Railway Companies, 79 Ala. 465, 58 Am.Rep. 615, it was said that the evil intended to be specially prevented was the legislative granting of exclusive privileges in the nature of monopolies. The language of the opinion is: 'What, it may be asked, is the nature of these special or exclusive privileges which are thus prohibited to be granted by the Legislature? It seems plain from the very terms used that the evil intended to be specially prohibited was the granting of special privileges in the nature of a monopoly by the legislative creation of corporate franchises.' And on page 475 of 79 Ala. (58 Am.Rep. 615): 'The policy of the law, as now declared by our Constitution, is as clear in the condemnation of the grant of irrevocable exclusive privileges conferred by franchise as that of the common law was in the reprobation of pure monopolies.' The constitutional provision and the decision to which I have referred were correctly interpreted by the Supreme Court of the United States in Bienville Water Supply Co. v. Mobile, 186 U.S. [212], 213, 22 S.Ct. [820], 824, 46 L.Ed. 1132, where it was said, after referring to our case: 'By a separate section of the Constitution, it is declared that the Legislature shall pass no act "making an irrevocable grant of special privileges or immunities." While that body may grant special privileges and immunities to build waterworks, construct railways, or other works of public utility, and by a failure to duplicate a grant make it in effect for the time being exclusive, yet no Legislature can forestall action by a succeeding Legislature, or bind the state by making the grant in terms exclusive. As much force and effect must be given to section 23 as to any other, and it was obviously the intent that, even if exclusive privileges were granted, the monopoly feature thereof should always be subject to revocation.' * * * This right to grant like franchises to others, without regard to the terms of previous grants, was reserved and secured in every case by the provision under consideration, and it became part and parcel of every contract granting fran-

chises under the Constitution of 1875. Beyond that, the provision did not go. It did not prohibit the grant of franchises in perpetuity, nor did it reserve the right to revoke anything but the exclusive feature of franchises which might be granted in exclusive terms. The right to revoke the exclusive features of a franchise it did, however, reserve, though the franchise may have taken the form of a contract upon valuable consideration. It has no application to the case in hand."

In the case of Phenix City v. Alabama Power Co., supra, in dealing with the special privilege clause in Section 22 of the Constitution of 1901, Mr. Justice Foster said:

"Provisions appear for the first time in the Constitution of 1875, which prohibit irrevocable grants of special privileges, and they did not prohibit in terms exclusive privileges. But this Court in Birmingham & Pratt M. Street Ry. Co. v. Birmingham Street Ry. Co., 79 Ala. 465, 58 Am. Rep. 615, held that the State legislature had no power to make exclusive grants, and could not confer such rights on cities and had not done so, and none is to be inferred from what is section 220 of the Constitution of 1901. The Court observed: 'It seems plain from the very terms used, that the evil intended to be specially prevented was the granting of exclusive privileges in the nature of a monopoly by the legislative creation of corporate franchises.' It was said that the 'irrevocable grant' thus prohibited, was of an 'exclusive privilege,' which the State could and had granted prior to the Constitution of 1875. So that the use of the word 'exclusive' in the Constitution of 1901 only expressed what had been declared to be the meaning of the Constitution of 1875. Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132."

In Old Colony Trust Co. v. Omaha, 230 U.S. 100, 33 S.Ct. 967, 971, 57 L.Ed. 1410, the Supreme Court of the United States quoted with approval the following from the decision in City of Plattsmouth v. Nebraska Telephone Co., 80 Neb. 460, 114 N.W. 588, 14 L.R.A.,N.S., 654, 127 Am.St. Rep. 779:

" '* * * A special privilege in constitutional law is a right, power, franchise, immunity, or privilege granted to, or vested in, a person or class of persons to the exclusion of others, and in derogation of common right. * * * Ordinance No. 91 does not attempt to confer upon the defendant any exclusive right or franchise, and leaves it open for the city, at any time, to extend to other companies or corporations the same privileges awarded to the defendant. The contention, therefore, that Ordinance No. 91 is void and confers no right upon the defendant, cannot be sustained.' * * *."

See also State ex inf. Chaney v. West Missouri Power Co., 313 Mo. 283, 281 S.W. 709; Guthrie Daily Leader v. Cameron, 3 Okl. 677, 41 P. 635; Louisville v. Cumberland Tel. & Tel. Co., 224 U.S. 649, 32 S. Ct. 572, 56 L.Ed. 934.

(8) This brings us to a consideration of the effect of the ordinance of November 12, 1901, and the effect of the ordinance of April 1, 1941. There is much discussion in briefs as to the date when the Constitution of 1901 became effective. The Constitution of 1901 contains the two following sections, the subject of debate in the present case:

"Section 22. That no ex post facto law, nor any law, impairing obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."

"Section 228. No city or town having a population of more than six thousand shall have authority to grant to any person, firm, corporation, or association the right to use its streets, avenues, alleys, or public places for the construction or operation of water works, gas works, telephone or telegraph line, electric light or power plants, steam or other heating plants, street railroads, or other public utility, except railroads other than street railroads, for a longer period than thirty years."

It is the insistence of appellant that the Constitution of 1901 became effective prior to the grant of November 12, 1901, the idea being that the Constitution of 1901 became effective when the people voted on November 11, 1901. Accordingly, it is contended that the grant of November 12, 1901, is subject to revocation under Section 22 and since the City of Bessemer had had a population exceeding six thousand since 1900, according to the bill, the franchise, if any, could not have a life exceeding thirty years, according to Section 228. This would mean that the franchise granted on November 12, 1901, even if unrevoked, had expired when this suit was instituted. But on the other hand, appellee insists the Constitution of 1901 did not become effective until after the grant of November 12, 1901, became effective, the idea being that the Constitution of 1901 became effective when the Governor proclaimed it on November 28, 1901. Accordingly, appellee contends that the ordinance dated November 12, 1901, is not affected by the Constitution of 1901.

However, we do not think that it is necessary to determine the effective date of the Constitution of 1901, because, as insisted by appellee, it has a valid, subsisting franchise, granted by the ordinance of April 15, 1890. There was no need for a franchise granted on April 15, 1890, to be granted again on November 12, 1901. Nor do we think that the franchise of April 15, 1890, was superseded by a franchise granted on November 12, 1901. The latter ordinance recits that its purpose is "to ratify and confirm" the earlier ordinance. Section 1 of the ordinance adopted November 12, 1901, expressly "ratifies and confirms" the franchise granted by the ordinance adopted April 15, 1890, and all rights, etc., granted thereby are expressly "recognized and ratified and confirmed unto said Bessemer Electric Company and its assigns." This is but a recognition of the continued existence of what Bessemer Electric Co. had already conveyed to Birmingham Railway, Light & Power Co., by appropriate conveyance, as shown above. The terms of the 1901 ordinance disclose no intent on the part of the City of Bessemer to revoke the earlier ordinance, and no intent on the part of Birmingham Railway, Light & Power Co., to surrender the rights granted under the earlier ordinance.

It is true that the grant of November 12, 1901, contains additional rights. This may constitute a need for the second grant, but it does not seem to us that this results in a termination of the first grant. Town of Golconda et al. v. John Field et al., 108 Ill. 422; Willis v. Calhoun, 145 Ky. 95, 140 S.W. 199. The grant of November 12, 1901, does not expressly terminate the grant of April 15, 1890, and the grant of April 15, 1890, will not be divested by implication. 37 C.J.S., Franchises, § 26, p. 183. Under the view we take of the case, we do not consider that the validity or present effectiveness of the grant of November 12, 1901, is here involved.

The case of Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 So. 39, L.R.A. 1918F, 667, is cited by appellant as being adverse to the view here stated. In that case a contract between the city and the utility company, relative to rates to be charged by the company, was held to be void in part because the city had no authority to make it. Later the legislature authorized such a contract and subsequently a new agreement was made which contained many of the provisions of the original contract and certain modifications. Evidently it was contended that the new contract was nothing but an effort to ratify the original contract, which, being void, was not capable of being so validated. But this court held that the second contract was a new contract and since it had been duly authorized, was binding on the parties. We do not consider that the case referred to is authority for the position that the ordinance of November 12, 1901, superseded the ordinance of April 15, 1890. As pointed out, the grant of April 15, 1890, was not invalid.

Furthermore, it is clear that, the ordinance of April 1, 1941, adopted by the City of Bessemer could not revoke and destroy the franchise granted April 15, 1890, and now owned by the appellee. In Town of New Decatur v. American Tel. & Tel. Co., supra, Mr. Justice Mayfield, in speaking of the possible effect of Section 22 of the Constitution of 1901 on a previously granted franchise, said:

"The last clause of this section * * * was not in the Constitution of 1875, but appeared, for the first time, in the Constitution of 1901. It is therefore ex post facto if it is made to apply to the ordinance or law in question, which was approved on the 7th day of June, 1898. The rights acquired and the contracts made thereunder had attached and become vested before the Constitution of 1901 was adopted. A constitutional provision can no more destroy vested rights nor impair the obligation of existing contracts than can a statute or a municipal ordinance."

See also Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912, Ann.Cas. 1914A, 152; Phenix City v. Southern Bell T. & T. Co., D.C., 33 F.Supp. 283, 286. In the last cited case the court, in passing on the effect of Section 228 upon franchises previously granted, said:

"* * * It is equally clear that the Constitution of 1901, certain provisions of which plaintiff invokes, can have no application to these ordinances, as it did not become effective until after the ordinances were adopted and accepted. Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912, Ann.Cas.1914C, 1282; Town of New Decatur v. American Tel. & Tel. Co., 176 Ala. 492, 58 So. 613, Ann.Cas.1915A, 875."

We think it is beyond question that the "contract impairment" clause of the Federal Constitution prevents the Alabama Constitution of 1901 from operating retroactively so as to limit or restrict rights under contracts existing prior to its adoption.

We conclude that the lower court acted correctly in sustaining the demurrer to the bill of complaint.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.