40 So.2d 193

### CITY OF BESSEMER v. BIRMINGHAM ELECTRIC CO.

6 Div. 743.

Supreme Court of Alabama.

April 21, 1949.

Wm. S. Pritchard, Winston B. McCall, and Victor H. Smith, all of Birmingham, and H. P. Lipscomb, Jr., of Bessemer, for appellant.

White, Bradley, Arant & All, of Birmingham, for appellee.

STAKELY, Justice.

Upon consideration we have concluded that the Constitution of 1901 became effective on November 28, 1901. As we shall undertake to show, this determination is decisive of the questions presented. The case is on appeal here from a decree of the equity court sustaining the demurrer to the bill of complaint as amended.

This is the second appeal of the case to this court. For an understanding of the case as presented on this appeal reference is made to the decision of this court on the first appeal as reported in City of Bessemer v. Birmingham Electric Co., 248 Ala. 345, 27 So.2d 565. There is no need to repeat what was there said or describe in detail again the exhibits, including the ordinances hereafter referred to, attached to the bill as shown in the report of the case on the first appeal. It is sufficient to say that this bill is brought by the City of Bessemer to adjudge that the Birmingham Electric Company has no franchise to maintain its poles, wires etc. in the streets and alleys of the city, to require it to cease doing business within the city and to recover compensation for its alleged unlawful use of the public ways of the city. Attached to the bill and made a part thereof is an ordinance passed by the City of Bessemer dated April 15, 1890, granting to Bessemer Electric Company and its associates and assigns certain rights and privileges as

more particularly described therein. There is also attached to the bill and made a part thereof an ordinance passed by the City of Bessemer, dated November 12, 1901, to ratify and confirm the ordinance of April 15, 1890, and to extend and enlarge the same and to authorize its transfer and assignment to Birmingham Railway, Light & Power Company. Both of these ordinances were attacked on the first appeal, but we found it unnecessary to pass on the present effectiveness of the ordinance dated November 12, 1901, since we found, under the allegations of the bill, that the franchise granted by the ordinance of April 15, 1890, is valid and subsisting and is now owned by Birmingham Electric Company.

On this appeal the validity or present effectiveness of each ordinance is again attacked. However the franchise granted under the ordinance of April 15, 1890 is attacked in the amended bill on the theory that it has been forfeited and is now void. The propositions now presented relating to the ordinance of April 15, 1890 involve questions of pleading and remedy. Since we think that the franchise granted in the ordinance of November 12, 1901 is valid and subsisting and that this conclusion settles the questions presented, we shall proceed to a discussion of the matters there involved.

It is insisted by the appellant that since the Constitution of 1901 is silent as to its effective date, it became effective when ratified and adopted by the people which was by their vote of approval on November 11, 1901. On this premise it is argued that the Constitution of 1901 governs the franchise granted by the ordinance on the subsequent date of November 12, 1901, as the City of Bessemer at that time had a population of more than six thousand. It is further argued that under the charter of the city publication of ten days was necessary before the ordinance took effect and as the ordinance was first published on November 14, 1901, it could not have become effective until November 25, 1901. It is contended that since the ordinance of November 12, 1901, is controlled by the Constitution of 1901, the franchise granted by the ordinance of November 12, 1901, was limited to a period of thirty years by section 228 of the Constitution of 1901. Section 228 of the Constitution of 1901 is as follows:

"No city or town having a population of more than six thousand shall have authority to grant to any person, firm, corporation, or association the right to use its streets, avenues, alleys, or public places for the construction or operation of water works, gas works, telephone or telegraph lines, electric light or power plants, steam or other heating plants, street railroads, or any other public utility, except railroads other than street railroads, for a longer period than thirty years."

The Constitution of 1901 was framed in convention held pursuant to an act of the legislature. Act 102, p. 224 et seq., Acts of Alabama 1900–1901. The act provided for elections to determine whether a convention should be held and if so, to select delegates to the convention, for holding the convention, pay of delegates, etc., for submission of the new constitution to the electors of the state and in the event of its ratification by them for a proclamation by the governor designating the day upon which the new constitution should go into effect.

We set out section 24 of the foregoing act as follows:

"Be it further enacted, That within fifteen days after the day on which the election shall be held for the ratification or rejection of said constitution, it shall be the duty of the governor, secretary of State and attorney general to assemble in the office of the secretary of State, and open the returns of said election, and they shall count the votes which may have been cast 'For constitution' and 'against constitution', as appears from such returns, and the result shall be certified to the governor by the secretary of State and attorney-general, and by him made known to the people of this State by his proclamation, published as provided by section six in this act; and from and after a day to be made known in such proclamation, not more than ten days from the date thereof, if the said constitution shall be found to have been ratified by a majority of all the qualified electors voting at said election,

174

the said new constitution so ratified shall go into immediate effect as the constitution of the State of Alabama, and shall thenceforth be binding and obligatory as such upon all the people of this State."

On November 21, 1901, the governor issued the following proclamation which is set out at page 293 of the volume of the Code of 1940 containing Titles 1–6, "A Proclamation by the Governor.

"Whereas, It appears from the certificate of the Secretary of State and Attorney-General that on the 11th day of November, 1901, at an election held in the several counties in this State, for and against Constitution, that the whole number of votes cast 'For Constitution' is eighty-one thousand seven hundred and thirty-four (81,734).

"Now, Therefore, I, William D. Jelks, by virtue of the power and authority in me vested as Governor of Alabama, do declare the majority of votes case 'For Constitution' to be twenty-six thousand eight hundred and seventy-nine (26,879).

"I, Therefore, proclaim that the said new Constitution so ratified shall go into effect as the Constitution of the State of Alabama on Thursday, it being the twenty-eighth day of November, 1901, and shall thereafter be binding and obligatory as such upon the people of this State.

"In Witness Whereof, I have hereunto set my hand and caused the Great Seal of State to be affixed at the Capitol, in the City of Montgomery, this the 21st day of November, A.D., 1901.

"Wm. D. Jelks,
"Governor.
"By the Governor:
"Robert P. McDavid,
"Secretary of State.
"(Proclamation Record, p. 129.)"

The governor made his proclamation within fifteen days after the election as required by the act. In his proclamation the governor fixed the 28th day of November, 1901 as the effective date of the constitution. The effective date accordingly was within ten days of the date of the proclamation and this was in accordance with the requirements of the act.

We are not dealing with a situation where no effective date was prescribed but a situation where the effective date became fixed by law. In the case of State v. Kyle, 166 Mo. 287, 65 S.W. 763, 765, 56 L.R.A. 115, the court said: "As a general rule a constitutional amendment takes effect from the day of its ratification by the voters to whom it is submitted for that purpose. * * * But an exception to this rule is when a different provision is made by law."

In the case of Reade v. City of Durham, 173 N.C. 668, 92 S.E. 712, 718, the Legislature of North Carolina passed an act providing that a constitutional amendment be submitted to the people at the next general election in November and that, if ratified by them, it should become effective on January 10, 1917. The amendment was submitted to the people without any reference in the submission to an effective date. After ratification of the amendment by the people in November, legislative acts were passed on January 9, 1917, which would have been invalid under the new amendment if the effective date thereof was in the previous November. After a discussion of many authorities on this question, including some of the cases hereinafter cited, the court held that the constitutional amendment there in question became effective on January 10, 1917, the date fixed in the enabling act. The court pointed out that the voters must have understood that the amendment would go into effect on the date fixed in the statute and that the practical construction of the legislative and executive departments of the state on this point was of great importance. In its opinion, the court said:

"We are therefore constrained to hold, not only by clear precedent, but by a fair and reasonable construction of the Constitution, without the aid of it, and also by a proper yielding to the contemporaneous and continuous interpretation of the Legislature and the executive department of the state, that when the amendments were submitted to the people last November, the Legislature intended, and the people understood, that the question to be considered by the voters was not merely whether

they should be adopted without qualification, but also whether, if adopted, they should take effect on January 10, 1917; the time when they should take effect being an essential and integral part of the question submitted to the voters."

See also Real v. People, 42 N.Y. 270; Ellis v. Cleburne, Tex.Civ.App., 35 S.W. 495; City of Duluth v. Duluth St. Ry. Co., 60 Minn. 178, 62 N.W. 267; In re Opinion of the Justices, 76 N.H. 612, 85 A. 781.

The people ratified the constitution as submitted to them and it will be noted that the Schedule of the Constitution of 1901 contains the following, " * * * It is hereby ordained and declared: 1. That all laws in force at the ratification of this constitution and not inconsistent therewith, shall remain in full force until altered or repealed by the legislature."

 And so it appears that the constitution became effective under the provisions of Act 102, which we have in part set out. Section 5 of the Schedule makes an express change in the method of publication provided in Act 102 which indicates that the remaining provisions of the act, including the provision as to the time of the effectiveness of the constitution, were left in full force and effect. We think it is a matter of common knowledge that the officers charged with the duty of handling the machinery of putting the new constitution into effect regarded the enabling act as being operative, that the election was held and the canvass of votes made as therein provided, that the governor's proclamation was within fifteen days after the election and proclaimed an effective date within ten days after the date of proclamation. All of this was done as provided in the enabling Act 102. This practical contemporaneous construction creates a strong presumption that the construction rightly interprets the intent of the people and of the framers of the constitution. State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974.

The appellant points out that the Constitution of 1901 is in effect an amendment of the Constitution of 1875, because the enabling Act 102 shows in its caption and in its section 1 that the purpose of the convention shall be to "revise and amend the constitution of this State." So it is earnestly insisted that the Constitution of 1901 is subject to Article XVII, Section 1 of the Constitution of 1875, which, among other things, provides as follows:

"If it shall thereupon appear that a majority of all qualified electors of the state, who voted at said election, voted in favor of the proposed amendments, said amendments shall be valid, to all intents and purposes, as parts of this constitution; and the result of such election shall be made known by proclamation of the governor."

It is therefore further insisted that by virtue of the foregoing provisions of the Constitution of 1875 the proposed amendment to the Constitution of 1875 became effective when the people voted their approval on November 11, 1901.

We do not agree with this position. Article XVII, Section 1 of the Constitution of 1875 does not set forth the exclusive method of amending the constitution when that constitution was in force. In fact it is evident that these provisions were not followed. The Constitution of 1901 was not proposed by the general assembly. It was not read on three several days in each house of the assembly. It was not published three months before the next general election for representatives and it was not submitted to the electors at the next general election for representatives. On the contrary the constitution was proposed by a convention called and elected under an act of the general assembly and it was voted on at a special election which was authorized by the same act.

Section 2, Article XVII of the Constitution of 1875 expressly recognized the power of the legislature to call conventions for altering or amending the constitution, provided that conventions could be called only after approval of a majority of electors of the state voting at an election on the question. In the case of Collier v. Frierson, 24 Ala. 100, 109, this court recognized the fact that the mode of putting into effect a constitution proposed by a convention is not governed by the constitutional provisions authorizing the legislature to propose amendments, it being said:

"We entertain no doubt, that, to change the constitution by any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed, and the omission of any one is fatal to the amendment."

It must be conceded as a general proposition that the legislature has the power to call a constitutional convention even though the constitution does not specifically provide for the calling of a convention by the legislature. Ellingham v. Dye, 178 Ind. 336, 99 N.E. 1, Ann.Cas. 1915C, 200, writ of error dismissed in Marshall v. Dye, 231 U.S. 250, 34 S.Ct. 92, 58 L.Ed. 206; In re Opinion to the Governor, 55 R.I. 56, 178 A. 433; Wells v. Bain, 75 Pa. 39, 15 Am.Rep. 563; Jameson on Constitutional Conventions, §§ 219, 394-403, 570, 571, 574; Cooley on Constitutional Limitations, 8th Ed., p. 85; 1 Am.Jur., Constitutional Law, § 26, p. 631.

Having plenary power, as the arm of the state to which legislative power has been delegated by the people, to call a constitutional convention, it is clear that the general assembly had the power to provide for the election of delegates, for the holding of an election for ratification or rejection, for the canvassing of the vote and for the installation of a new constitution. Wells v. Bain, 75 Pa. 39, 15 Am. Rep. 563; In re Opinion to the Governor, 55 R.I. 56, 178 A. 433; Jameson on Constitutional Conventions, §§ 413-418. That is precisely what the general assembly did in the enabling act. Act 102, Acts of Alabama 1900–1901.

The provisions of Article XVII, Section 1, Constitution of 1875 were applicable only to amendments proposed by the legislature and not to amendments or new constitutions framed in conventions. These provisions are accordingly not applicable here.

As stated the date designated in the governor's proclamation was November 28, 1901. We need not consider, therefore, the provisions of section 20 of the city charter, as amended, because even if we concede for argument only that the ordinance of November 12, 1901, did not become effective until November 25, 1901, its effective date would still antedate that of the constitution. On the first appeal in considering the effect of section 228 of the Constitution of 1901, upon franchises previously granted, we quoted with approval these words, " * * * It is equally clear that the Constitution of 1901, certain provisions of which plaintiff invokes, can have no application to these ordinances, as it did not become effective until after the ordinances were adopted and accepted." City of Bessemer v. Birmingham Electric Co., 248 Ala. 345, 27 So.2d 565, 578.

The court acted correctly in sustaining the demurrer to the bill of complaint as amended.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON, and SIMPSON, JJ., concur.